OPINION
{¶ 1} Defendant-appellant Lorice Moore ("Moore") appeals his conviction in the Mahoning County Common Pleas Court of complicity to commit murder in violation of R.C. 2903.02(A) and2923.03(A)(2). Moore raises four issues before this court. First, he contends the trial court erred when instructing the jury on the elements of complicity. Next, he argues that his conviction for complicity to commit murder is not supported by sufficient evidence. Third, he argues the trial court erred when admitting other acts evidence in violation of Evid.R. 404(B). Finally, he contends that the trial court violated his right to confront the witnesses against him when it allowed the prosecutor to show the videotaped deposition of a state's witness when the deposition was taken before Moore received a bill of particulars. We find no merit with these arguments. For the reasons stated below, the judgment of the trial court is affirmed.
 STATEMENT OF FACTS {¶ 2} In the early afternoon of March 19, 2002, Stephen Shackleford, the victim, got into a fight with Moore's cousin, Armin Moore ("Armin"). During the fight, Moore hit Shackleford and brandished a gun. Prior to this fight, Moore, Armin, and Shackleford had all been friends.
 {¶ 3} After the fight, Shackleford went to his house and told his girlfriend (Cicely Floyd) about the fight and told her to go home, which was just up the street. Floyd left Shackleford's house, but instead of going home, Floyd walked to a friend's house to tell her what had happened. On the way to her friend's house, she walked by a parking lot which was behind Shackleford's home. At that time, the parking lot was empty. Floyd's friend was not at home, so she proceeded to walk back to her own house.
 {¶ 4} On the way to her house, Floyd passed by the same parking lot. This time, Shackleford was standing near his back door, arguing with Moore, who was standing with Armin at the other end of the parking lot. Moore's brother and his friend, Eddie Bryant, were at the side of a nearby building, but were not participating in the argument. Floyd heard Shackleford say, "I've known you since you were knee high," and Moore responded, "I don't care because blood is thicker than water."
 {¶ 5} When Floyd walked in her front door, Shackleford walked in her back door and briefly discussed the recent confrontation with Moore. Shackleford then left through her front door and Floyd watched him as he walked to his house. A few minutes later, Floyd heard shots and looked through her front window. She saw Shackleford run from behind his house with Moore behind him. Moore had a gun in his hand as he was chasing Shackleford. Bryant was in front of Shackleford's home and shot Shackleford when Shackleford came into view. Floyd saw Bryant's gun fire, but never saw Moore's gun fire. Both Floyd and another witness testified that they heard three or four shots. Moore and Bryant stood over Shackleford's dead body in the street until Floyd ran out of her house while calling 911. Moore and Bryant then ran off in the same direction, behind Shackleford's home.
 {¶ 6} From the crime scene, detectives recovered three slugs and one unspent bullet, which was a different caliber than the three slugs. Two of the slugs were positively identified as being shot from the same gun. The BCI analyst testified that the third slug was consistent with being shot from the same firearm, however, he also stated that it could have been shot from a different gun. The doctor who performed the autopsy testified that Shackleford was shot three times and that his death was caused by the gunshot wounds.
 {¶ 7} As a result of this incident, Moore was arrested and brought to trial. At the close of that trial, the trial court instructed the jury on the offenses of murder and complicity to commit murder. The jury acquitted Moore of murder, but found him guilty of complicity to commit murder in violation of R.C.2923.03(A)(2) and 2903.02(A). The trial court then sentenced Moore accordingly. Moore filed a timely appeal raising four assignments of error.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 8} "The trial court infringed appellant moore's due process rights under the fourteenth amendment to the constitution and section sixteen, article I of the ohio constitution when it failed to instruct the jury that it must find that appellant moore knew of the principal's intent to commit murder in order to convict appellant moore of complicity to commit murder in violation of R.C. 2903.01(A). (Transcript at 651-652)."
 {¶ 9} Moore does not challenge the trial court's initial jury instruction; rather, he argues that the trial court erred when it answered a question the jury posed to the court during its deliberations. He contends the jury's question indicated that it was misled regarding the intent necessary to convict Moore of complicity to commit murder and that the trial court's failure to further instruct the jury when answering the question resulted in a misapplication of the law to the facts.
 {¶ 10} In response, the state argues that the trial court properly responded to the jury's question by referring it back to the jury instruction originally given. It contends these instructions were not confusing or misleading. Accordingly, it believes the trial court did not need to give further instructions in response to the jury's question.
 {¶ 11} As a general rule, if a party does not object to a jury instruction before the jury retires to consider its verdict, then that party has waived all arguments regarding those jury instructions except for plain error. State v. Hartman,93 Ohio St.3d 274, 289, 2001-Ohio-1580. But, this rule does not apply when, as in this matter, the jury asks for further instruction or for clarification of a previously given instruction. When this happens, a trial court has discretion in formulating its response and its decision will only be reversed for an abuse of that discretion. State v. Carter, 72 Ohio St.3d 545, paragraph one of the syllabus, 1995-Ohio-104.
 {¶ 12} The jury instruction as a whole must be considered to determine if there was prejudicial error. State v. Noggle,140 Ohio App.3d 733, 750, 2000-Ohio-1927. An instruction results in prejudicial error when from the record it is gleaned that such an instruction resulted in a manifest miscarriage of justice. Statev. McKibbon, 1st Dist. No. C-010145, 2002-Ohio-2041. We will not reverse a criminal conviction due to an erroneous jury instruction unless it is clear from the record that the jury instruction resulted in a manifest miscarriage of justice. Id.
 {¶ 13} During its deliberations, the jury asked the trial court the following question:
 {¶ 14} "In order for the defendant to be found guilty of complicity to commit murder, does the defendant have to have prior knowledge of another's intent to commit murder." (Tr. 651).
 {¶ 15} In response to this question, the court referred the jury to the court's previous instructions. The instructions as to complicity were as follows:
 {¶ 16} "Before you can find the defendant guilty of complicity to commit murder, you must find beyond a reasonable doubt that on or about the 19th day of March and in Mahoning County, Ohio the defendant purposely aided and abetted another in the commission of the offense of murder.
 {¶ 17} "Aided and abetted means supported, assisted, encouraged, cooperated with, advised or incited.
 {¶ 18} "All of the other elements of the charge of murder have been defined for you and they would apply to complicity to commit murder." (Tr. 629).
 {¶ 19} Moore argues that the above instruction does not answer the question asked. Specifically, it is his position that the trial court should have instructed that the accused must have had prior knowledge of the principal's intent to commit murder.
 {¶ 20} We find this argument unpersuasive. In State v.Herring, 94 Ohio St.3d 246, 2002-Ohio-796, a jury instruction similar to the one above was challenged. In Herring, the Supreme Court held that the initial instructions given to the jury were sufficient. Id. It stated the following:
 {¶ 21} "Herring's claim assumes that the jury could have found that he `specifically intended to aid and abet another in causing the death' of another without finding that he specifically intended to cause the death of another. We disagree. It is hard to see how a person could, in the words of the instruction, intend to `help, assist, or strengthen' or `encourage, counsel, incite, or assist' another person in causing death, without also intending that the victim die. It is equally hard to see any reasonable likelihood that the jury would understand the instruction as allowing the conviction of a defendant who did not intend that the victim die. Thus, the instructions the trial court gave are functionally equivalent to an instruction requiring specific intent to cause death." Id. at 250.
 {¶ 22} Generally, if the trial court gives the jury written copies of its instructions and its instructions are a good statement of the law, then the trial court does not abuse its discretion when responding to a jury question by referring the jury to its written instructions. See, e.g. State v. Lindsey,87 Ohio St.3d 479, 488, 2000-Ohio-465 (stating that there is no abuse of discretion in referring a jury to written instructions if they clearly and comprehensively answer the question and are a good statement of law). As shown above, the jury instruction is a good statement of law and is a clear answer to the question. Thus, we are unable to find that the trial court abused its discretion by referring the jury to its previous instruction instead of formulating a different answer. Accordingly, this assignment of error lacks merit.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 23} "The state failed to prove beyond a reasonable doubt that appellant moore was guilty of complicity to commit murder in violation of R.C. 2903.02(A) because it offered insufficient evidence that appellant moore knew of co-defendant bryant's intent to commit murder."
 {¶ 24} Moore contends that the state needed to prove that he knew of Bryant's intent to murder Shackleford in order to convict him of complicity to commit murder. He argues that because the state did not introduce any evidence that he did know of Bryant's intent, his conviction is not supported by sufficient evidence. The state responds by arguing that the circumstances surrounding the crime demonstrates that Moore knew of Bryant's intent and supports his conviction for complicity to commit murder.
 {¶ 25} In viewing a sufficiency of the evidence argument, a conviction will not be reversed unless the reviewing court holds that no rational trier of fact could have found that the elements of the offense were proven beyond a reasonable doubt. State v.Goff, 82 Ohio St.3d 123, 138, 1998-Ohio-369. The court must view the evidence in the light most favorable to the prosecution. Id. Whether or not the state presented sufficient evidence is a question of law dealing with adequacy. State v. Thompkins,78 Ohio St.3d 380, 386, 1997-Ohio-52.
 {¶ 26} Moore was convicted of complicity to commit murder by aiding or abetting the offense in violation of R.C. 2903.02(A) and 2923.03(A)(2). R.C. 2903.02(A) defines murder as, inter alia, purposely causing the death of another. A person is guilty of complicity if that person aids or abets another in committing an offense while acting with the kind of culpability required for the commission of an offense. R.C. 2923.02(A)(2).
 {¶ 27} Moore concedes that Bryant murdered Shackleford; he is not challenging whether the principal offense was committed. Instead, Moore is arguing that there is insufficient evidence showing that he is complicit by aiding and abetting in that offense.
 {¶ 28} "It has been held that aiding and abetting contains two basic elements: (1) an act on the part of a defendant contributing to the execution of a crime, and (2) the intent to aid in its commission." State v. Davidson, 3d Dist. No. 9-2000-106, 2001-Ohio-2163, citing United States v. Smith
(C.A. 5, 1977), 546 F.2d 1275, 1284. As the Ohio Supreme Court has stated, in order to prove that a person aided or abetted another in committing a crime, "the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime." State v.Johnson, 93 Ohio St.3d 240, 2001-Ohio-1336, syllabus. Accordingly, "the mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor." State v. Widner (1982),69 Ohio St.2d 267, 269. Rather, the evidence must demonstrate that the defendant expressed concurrence with the unlawful act or intentionally did something to contribute to an unlawful act.State v. Stepp (1997), 117 Ohio App.3d 561, 568. In other words, "to properly convict a defendant of complicity, the State must introduce evidence that the accused affirmatively acted to effect the crime." State v. Miller, 8th Dist. No. 81608, 2003-Ohio-1168, at ¶ 27.
 {¶ 29} In this case, Moore does not argue that his actions "supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime." Instead, Moore argues that the state failed to prove the second prong of aiding and abetting: that he was acting with the requisite intent when he chased Shackleford around the building. Moore contends there is insufficient evidence supporting a conclusion that he knew of Bryant's intent.
 {¶ 30} R.C. 2923.03(A) specifies that a person is only guilty of complicity when he acts with the kind of culpability required for the commission of an offense. As the Ohio Supreme Court explained in Johnson, this means that the aider and abettor must share the criminal intent of the principal. Id. at syllabus. Thus, Moore is guilty of complicity to commit murder only if hepurposefully aided or abetted in Shackleford's murder.
 {¶ 31} However, the state does not need to prove that the accomplice and principal had a specific plan to commit a crime.Johnson, 93 Ohio St.3d at 245. The fact that the defendant shares the criminal intent of the principal may be inferred from the circumstances surrounding the crime, which may include the defendant's presence, companionship, and conduct before and after the offense is committed. Id. at 245-246. This is a situation where "[c]ircumstantial evidence and direct evidence inherently possess the same probative value," State v. Jenks (1991),61 Ohio St.3d 259, paragraph one of the syllabus, because "[t]he intent of an accused person dwells in his mind. Not being ascertainable by the exercise of any or all of the senses, it can never be proved by the direct testimony of a third person, and it need not be." In re Washington, 81 Ohio St.3d 337, 340,1998-Ohio-627, quoting State v. Huffman (1936),131 Ohio St. 27, paragraph four of the syllabus.
 {¶ 32} In this case, there is no direct evidence of Moore's intent. So the only way the state could prove Moore's intent is through circumstantial evidence.
 {¶ 33} In the matter at hand, Floyd testified that earlier in the day, prior to the shooting, she saw Moore and Shackleford having words in the parking lot. (Tr. 335). She further testified that the men were angry. (Tr. 398). Regarding the actual shooting, she testified that Moore shot at and chased Shackleford around his apartment building. (Tr. 339, 341, 426). She explained that Bryant was waiting at the side of the building and began to shoot as Shackleford came from behind the building. (Tr. 339, 426). When asked to explain how she knew Moore was shooting before Bryant began shooting, she explained that she could hear gunshots before she saw Shackleford, being chased by Moore, run out from behind the apartment complex. (Tr. 426). She further stated that Bryant was standing in her view and she did not see him fire until Shackleford came around the building. (Tr. 426). She explained that after the shooting, Bryant and Moore stood over the victim and then ran off together in the same direction. (Tr. 346, 349). She stated that she observed guns in both Moore and Bryant's hands. (Tr. 347, 426).
 {¶ 34} When this evidence is viewed in the light most favorable to the state, it is clear that any rational juror could have found the essential elements of the crime proven beyond a reasonable doubt. The action by Moore in using a deadly weapon to shoot at the victim demonstrates an intent to kill. See Widner,69 Ohio St.2d at 270 (using a gun in the commission of an offense is likely to produce death). Furthermore, Moore's action of shooting at the victim and chasing the victim into Bryant's gunfire, could lead a reasonable jury to conclude that he intended to aid and abet in the murder. Moreover, Bryant and Moore's act of fleeing the scene of the crime together could lead the reasonable jury to conclude that there was a plan to murder Shackleford. Thus, Moore's conduct before, during and after the commission of the offense could lead reasonable minds to conclude that Moore acted purposefully in aiding and abetting Bryant in murdering Shackleford. Accordingly, this assignment of error lacks merit.
 ASSIGNMENT OF ERROR NUMBER THREE {¶ 35} "The trial court abused its discretion and prejudiced appellant moore when it allowed the state to introduce evidence under Evid.R. 404(B) of appellant moore's participation in a fight between the victim and appellant's cousin. (Transcript at 308-311, 331-333)."
 {¶ 36} The trial court allowed Floyd to testify as to statements Shackleford made to her about a fight that occurred between Moore and Shackleford prior to Shackleford's murder. She stated that Shackleford told her about a fight he had with Armin and Moore. (Tr. 332, 333). She testified that Shackleford told her while he argued with Armin that Moore hit him and pulled out a gun. (Tr. 332).
 {¶ 37} Moore argues that the trial court should have excluded this evidence as impermissible other acts evidence. He contends that there must be some kind of logical connection between the fight and the murder in order for the evidence of the fight to be introduced. He concludes that since the fight was between Armin and Shackleford, rather than between Moore and Shackleford, there is no logical connection between the fight and Shackleford's murder.
 {¶ 38} In response, the state argues that other acts evidence is admissible in order to prove plan, scheme, motive, intent, or the context in which the crime occurred. The state contends this type of evidence is admissible if it has a temporal, modal, or situational relationship to the offense charged. It argues that the fight and murder are parts of an interrelated sequence of events that happened very close in time. Accordingly, it concludes that the relationship between the fight and the murder is sufficient to render the evidence admissible under Evid.R. 404(B).
 {¶ 39} A trial court has broad discretion over whether it should admit evidence of prior bad acts and its decision will only be reviewed for an abuse of discretion. State v. Huff
(2001), 145 Ohio App.3d 555, 556. The term "abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151, 157. Accordingly, we may not substitute our judgment for that of the trial court unless, considering the totality of the circumstances, the trial court abused its discretion. State v.Glasure, 7th Dist. No. 652, 2001-Ohio-3319.
 {¶ 40} Evid.R. 404(B) provides as follows:
 {¶ 41} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 42} This rule is in accord with R.C. 2945.59. State v.Robinson (July 10, 1998), 7th Dist. No. 94CA42. That statute provides:
 {¶ 43} "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant." R.C. 2945.59.
 {¶ 44} Since both Evid.R. 404(B) and R.C. 2945.59 codify an exception to the common law, evidence of other crimes and acts of wrongdoing must be strictly construed against admissibility.State v. Burson (1974), 38 Ohio St.2d 157, 158-159; State v.Smith (1992), 84 Ohio App.3d 647, 664. Such evidence is only admissible if the other act tends to show by substantial proof any of those things enumerated, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. State v. Broom (1988),40 Ohio St.3d 277, 282. It is never admissible when its sole purpose is to establish that the defendant committed the act alleged of him in the indictment. State v. Flonnory (1972), 31 Ohio St.2d 124.
 {¶ 45} Here, the state introduced evidence of the fight to demonstrate Moore's motive or intent regarding Shackleford's murder. In the closing argument, the prosecutor specifically referred to the fight as evidence of Moore's motive to murder Shackleford. (Tr. 588). Therefore, the argument that this evidence is inadmissible under Evid.R. 404(B) is without merit.
 {¶ 46} Furthermore, Moore's insistence that this evidence cannot "tend to show" that he either intended or had motive to kill Shackleford because the evidence regarding the fight shows that the fight was between Armin and Shackleford is incorrect. Floyd's testimony not only established that an argument occurred between Armin and Shackleford, but also that Moore hit Shackleford and brandished a gun during this argument. (Tr. 332-333, 383-384). The fact that Moore hit Shackleford in the previous fight is evidence which tends to show that Moore intended to physically harm Shackleford. State v. Brown, 3d Dist. No. 9-02-02, 2002-Ohio-6765, at ¶ 27. Moreover, Floyd testified that shortly after Shackleford told her about this argument, she saw Moore and Shackleford arguing. (Tr. 335). Therefore, contrary to Moore's arguments on appeal, there was clearly a disagreement between him and Shackleford. Thus, the evidence was in conformity with Evid.R. 404(B).
 {¶ 47} Under this assignment of error, Moore also questions Floyd's credibility and challenges the weight the prosecution placed on the previous fight. These arguments do not demonstrate why the evidence is not admissible under Evid.R. 404(B) and R.C.2945.59. Other acts evidence is admissible only if it complies with the statute and rule. The credibility of the witness who provides that evidence does not affect the evidence's admissibility. State v. Dever, 64 Ohio St.3d 401, 410,1992-Ohio-41; State v. Landrum (1990), 53 Ohio St.3d 107, 114. This is because matters such as the weight of the evidence and witness credibility are primarily to be determined by the finder of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Accordingly, this argument lacks merit.
 {¶ 48} Lastly, under this assignment of error Moore argues that Shackleford's behavior after the fight demonstrates that Moore could not have had motive or intent to kill Shackleford. Floyd testified that after the fight, Shackleford seemed irritated and upset and that he had no visible injuries. (Tr. 333, 385-386). Floyd offered to get his car for him, but he refused. (Tr. 377-378). She testified, "No one actually thought that it would go that far to kill him [Shacklford]." (Tr. 379). Moore assumes that if Shackleford did not fear for his life following the fight, then Moore could not have had the motive or intent to kill him. However, the victim's state of mind is irrelevant in this situation. The fact that Shackleford did or did not fear for his life does not mean that the fight is wholly unrelated to the murder. Thus, this argument is also without merit and this assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER FOUR {¶ 49} "The trial court infringed appellant moore's due process rights under the fourteenth amendment to the constitution and section sixteen, article I of the ohio constitution and appellant moore's right to confront his witnesses under the sixth amendment to the constitution and section ten, article I of the ohio constitution when it allowed the state to present a videotaped deposition of the coroner who performed the autopsy on the victim. The state failed to present a bill of particulars to appellant moore's trial counsel so that counsel could adequately prepare for the deposition. (Transcript at 523-526)."
 {¶ 50} Prior to trial, the state, pursuant to Crim.R. 15 requested an order permitting the deposition of Dr. Jesse Giles, the doctor who performed the autopsy on Shackleford. Dr. Giles at that time had a contract with Mahoning County to provide forensic pathology services to the Coroner. However, his employment with Mahoning County was going to end prior to the trial and, therefore, the state wanted to have his video deposition prior to him leaving the state for other employment. The trial court granted this request over Moore's objection.
 {¶ 51} Moore contends that allowing Dr. Giles to testify at that time denied him the right to meaningfully confront the witness because at the time Moore had not yet received the bill of particulars from the prosecution. He argues that the failure to provide him with the bill of particulars before the witness's deposition prevented his counsel from adequately preparing for the deposition. However, his counsel did cross-examine the witness at the deposition. In response, the state contends that Moore cannot claim he was prejudiced by not receiving the bill of particulars before the witness's deposition since he had not filed a written request for a bill of particulars.
 {¶ 52} Crim.R. 7(E) provides:
 {¶ 53} "When the defendant makes a written request within twenty-one days after arraignment but not later than seven days before trial, or upon court order, the prosecuting attorney shall furnish the defendant with a bill of particulars setting up specifically the nature of the offense charged and of the conduct of the defendant alleged to constitute the offense. A bill of particulars may be amended at any time subject to such conditions as justice requires."
 {¶ 54} A request for a bill of particulars is addressed to the sound discretion of the trial court and its decision regarding the bill of particulars is reviewed for an abuse of that discretion. State v. Brumback (1996), 109 Ohio App.3d 65,81; State v. Clay (1972), 29 Ohio App.2d 206, 215. Although the language contained in Crim.R. 7(E) is mandatory, a trial court's decision regarding whether to go forward in the absence of a proper bill of particulars will not be reversed on appeal if the defendant is not prejudiced by that decision. State v. Sellards
(1985), 17 Ohio St.3d 169, 172; State v. Petro (1947),148 Ohio St. 473, paragraphs two and three of the syllabus; Brumback,109 Ohio App.3d at 81.
 {¶ 55} In Ohio, a defendant has the right to a bill of particulars; however, if he fails to file a timely, written request for a bill of particulars, then he has waived that right.Hamilton v. Alvis (1959), 109 Ohio App. 298, 301; State v.Gerding (Sept. 30, 1998), 6th Dist. No. F-98-005; State v.Houser (May 30, 1996), 8th Dist. No. 69639. In this matter, the transcript of the pre-trial testimony reveals that Moore objected to the deposition based on the fact that he had not been provided with a bill of particulars. However, the record contains no indication that Moore ever filed a written request for a bill of particulars. As he never properly requested a bill of particulars before the deposition, he waived the right to have it prior to the deposition.
 {¶ 56} Regardless, the lack of the bill of particulars did not prejudice Moore during his cross-examination of Dr. Giles. "The purpose of the bill of particulars is to inform an accused of the exact nature of the charges against him so that he can prepare his defense thereto." State v. Fowler (1963),174 Ohio St. 362, 364. It is not to provide the accused with specifications of evidence and it should not serve as a substitute for discovery. State v. Robinson, 4th Dist. No. 01CA51, 2002-Ohio-6150, at ¶ 19. As the Fourth District explained, "an indictment serves to commence the criminal prosecution of a defendant by averring the essential elements of the indicted offense, while a bill of particulars serves to inform the defendant of the specific conduct alleged to constitute the indicted offense." Id. at ¶ 20.
 {¶ 57} In the matter at hand, the bill of particulars states that Moore was charged with Shackleford's murder, aiding and abetting in Shackleford's murder, the date of the murder and that there was a firearm specification. He knew this information from other documents he had already received, plus he knew that Shackleford was shot and killed as he ran from his house at 675 McBride Street in Youngstown, Ohio. Furthermore, as stated above, Dr. Giles' testimony was solely about the autopsy he performed on Shackleford. He stated that Shackleford was shot three times and he died as a result of gunshot wounds. The information in the bill of particulars would not have been helpful in preparing for the cross-examination of this witness. Moreover, despite the lack of the bill of particulars, Moore's counsel was able to participate in an extensive cross-examination of the witness. Consequently, these facts demonstrate that Moore was not prejudiced by the lack of the bill of particulars prior to the deposition. As such, this assignment of error is without merit.
 {¶ 58} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Waite, P.J., concurs.
DeGenaro, J., dissents; see dissenting opinion.