OPINION
{¶ 1} Defendant-appellant Arnold Parker appeals after being found guilty of three counts of rape and one count of gross sexual imposition by a jury in the Columbiana County Common Pleas Court. He presents issues surrounding the refusal to give an accomplice jury instruction, admission of evidence of a prior bad act, and sufficiency of the evidence concerning the force element in two of the rapes. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF FACTS {¶ 2} Appellant started dating Helen Nelson in 1969. He moved in with her in 1985. Helen Nelson took custody of four of her grandchildren in 1994 with the consent of her daughter, Kathryn Shariff. At that time, the children ranged in age from eight to under one. Helen Nelson eventually adopted the three youngest children. The children will be called child A, B, C and D in order of age from oldest to youngest.
 {¶ 3} In December 2002, a teacher in the multiple handicapped program at East Liverpool High School, who is a mandated child abuse reporter, became concerned about child A due to a comment Helen Nelson made at a conference. Specifically, she expressed a desire to lock child A up for a year. (Tr. 35). Child A, whose date of birth is January 1986, was going on seventeen at the time and was classified as mildly to moderately retarded. (Tr. 33). Upon questioning by her teacher, child A disclosed sexual abuse by her "pap" since before she was nine years old. She stated that her grandmother was mad and did not believe her recent accusation. (Tr. 36, 40).
 {¶ 4} All children were then interviewed by social workers and detectives and then removed from the home. Child B, whose date of birth is January 1987, also made allegations of continuing sexual abuse, including rape, by appellant. Child C revealed that appellant had recently put his hand down the back of her pants under her underwear and rubbed her and that he put her hand down the front of his pants under his underwear. Child C's date of birth is December 1990, and she was twelve at the time of removal. Child D, who was eight at the time of removal, made no allegations.
 {¶ 5} In February 2003, appellant was indicted on four counts. Count one was rape of child A, a child under thirteen, from 1995 until January 1999 in violation of R.C.2907.02(A)(1)(b). Count two was rape of child A (after reaching age thirteen) from February 1999 through December 2002 in violation of R.C. 2907.02(A)(2). The rapes of child A involved vaginal intercourse, fellatio, cunnilingus, digital penetration, and object penetration. Count three was for the rape of child B in 2002 in violation of R.C. 2907.02(A)(2). Count four was for gross sexual imposition due to the sexual contact with child C, a child under thirteen, in the fall of 2002. Apparently, Helen Nelson was indicted for three counts of felony child endangering as a result of her failure to report the allegations.
 {¶ 6} In October 2003, appellant entered Alford guilty pleas to count one and count four; he also pled to a reduced charge of sexual battery in count three. The state agreed to nolle count two and to recommend sentences of seven years, three years and three years to run concurrently. However, prior to sentencing, appellant filed a motion to withdraw his guilty plea. In March 2004, the trial court permitted appellant to withdraw his plea.
 {¶ 7} The case was then tried to a jury. On June 30, 2004, the jury found appellant guilty as charged on all four counts. On July 16, 2004, the court sentenced appellant to nine years for the rape of child A while she was under thirteen, nine years for the rape of child A after she turned thirteen, nine years for the rape of child B, and four years for the gross sexual imposition of child C, all to run consecutively. Appellant filed timely notice of appeal.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 8} Appellant's first assignment of error provides:
 {¶ 9} "THE TRIAL COURT ERRED WHEN IT FAILED TO INFORM THE JURY OF THE ACCOMPLICE TESTIMONY JURY INSTRUCTION AS REQUIRED BY R.C. 2923.03(D)."
 {¶ 10} In discussing the jury charge, defense counsel initially requested an accomplice instruction. (Tr. 301). They agreed to discuss the request after lunch. (Tr. 301). The discussion was later held off the record. When back on the record, the court noted that there had been discussions concerning the instructions and advised the attorneys that they could either present specific statements into the record at that time or after the instructions. (Tr. 303). Yet, defense counsel expressly said there was nothing on behalf of the defendant. (Tr. 303). The instructions were given without an accomplice instruction, and no objection was voiced thereafter. (Tr. 331-350).
 {¶ 11} Appellant believes that his initial request for the jury instruction on accomplice testimony sufficiently preserved the issue for appeal. However, the state posits that appellant was required to enter an objection on the record after the discussion held concerning his request. Hence, the state urges that appellant waived the error and that we should refuse to take notice of any plain error.
 {¶ 12} Appellant quotes an Ohio Supreme Court case as follows:
 {¶ 13} "Therefore, in a criminal case, where the record affirmatively shows that a trial court has been fully apprised of the correct law governing a material issue in dispute, and the requesting party has been unsuccessful in obtaining the inclusion of that law in the trial court's charge to the jury, such party does not waive his objections to the court's charge by failing to formally object thereto." State v. Wolons (1989),44 Ohio St.3d 64, 67.
 {¶ 14} In that case, defense counsel held an extensive discussion with the court regarding the requested instruction, and it was clear the court understood that the defense was objecting to the court's refusal to instruct. Id.
 {¶ 15} In another case, defense counsel twice requested that the court give a charge on the lesser offense of aggravated assault, citing case law to support his argument. After the jury was charged, but before it began deliberations, the judge asked whether there were any omissions or corrections that counsel wish to call to the attention of the court. Defense counsel replied, "Other than what's been previously placed in the record, no." The Supreme Court held, "Since the judge was fully apprised of the law and defense counsel's requests, appellee complied with Crim.R. 30(A), and properly preserved the issue regarding the failure to give a jury charge on aggravated assault for appellate review." State v. Mack (1998), 82 Ohio St.3d 198, 200.
 {¶ 16} Here, appellant initially requested an accomplice instruction. Then, however, an off the record discussion was held concerning the instructions. On returning to the record, the court advised the attorneys that they could either present specific statements on the matter into the record at that time or after the instructions. (Tr. 303). Yet, defense counsel expressly said there was nothing on behalf of the defendant, and he did not later object either. (Tr. 303).
 {¶ 17} This scenario is distinguishable from Wolons andMack. For all we know, defense counsel withdrew his request in chambers upon being advised of the proper application of the law. The court advised defense counsel to place his objection with specifics into the record. But, counsel did not do so on the two occasions presented to him after the off the record discussion.
 {¶ 18} Pursuant to Crim.R.30(A), failure to object to jury instructions, stating specifically the error and the grounds, waives all but plain error. Crim.R. 52(B) provides that plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court. The plain error doctrine is a discretionary mechanism which can be used by an appellate court only in exceptional circumstances to avoid a manifest miscarriage of justice. State v. Hughbanks,99 Ohio St.3d 365, 2003-Ohio-4121, ¶ 39. In any case, as will be demonstrated below, there was no error here, plain or otherwise.
 {¶ 19} R.C. 2923.03 is entitled, "Complicity." R.C.2923.03(A)(2) provides that no person acting with the kind of culpability required for the commission of an offense shall aid or abet another in committing the offense. R.C. 2923.03(D) provides that if an alleged accomplice of the defendant testifies against the defendant, the court must instruct the jury substantially as follows:
 {¶ 20} "The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.
 {¶ 21} "It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth."
 {¶ 22} Here, the defense initially sought an accomplice instruction under this statute due to Helen Nelson's testimony. Appellant relies on the following facts to support his argument that an accomplice instruction should have been given: Helen Nelson knew of the children's allegations at two times in the past but failed to remove appellant from the house and continued to leave the children alone with him; she pled guilty to three counts of child endangering stemming from this behavior; and she testified against him, which he presumed was in return for a lighter sentence (although, she states she spent ten weeks in jail and also received two years of probation). Appellant contends that although Helen Nelson was not indicted as an accomplice, she fits the definition of an accomplice under R.C.2923.03(A)(2). Appellant's argument is without merit.
 {¶ 23} Helen Nelson was charged with child endangering for failing to properly investigate the children's claims. The mens rea for this child endangering is recklessness. State v. McGee
(1997), 79 Ohio St.3d 193, 195. Thus, she was not "acting with the kind of culpability required for the commission of the offense [of rape and gross sexual imposition]" as required for complicity under R.C. 2923.03(A).
 {¶ 24} According to R.C. 2923.03(F), accomplices are liable as principals. There is no indication that Helen Nelson did anything that would make her liable as a principal due to complicity. Failing to believe accusations is not aiding and abetting rape under R.C. 2923.03(A)(2). Thus, she is not an "alleged accomplice" under R.C. 2923.03(D).
 {¶ 25} We also note that even an accessory after-the-fact or an obstructor of justice under R.C. 2921.32 is not considered an alleged accomplice for purposes of R.C. 2923.03(D). State v.Balfour (May 12, 1983), 8th Dist. No. 45478. In another case, the Eighth District was faced with an argument similar to that presented by appellant herein. State v. Sawyer (Mar. 14, 2002), 8th Dist. No. 79197. That defendant was charged with murdering her four-year-old. Her boyfriend was charged with and pled guilty to involuntary manslaughter for failing to report ongoing abuse and failing to seek immediate medical assistance; he was not charged with the affirmative act of child abuse. The defendant argued that there should have been an accomplice instruction since her boyfriend testified against her. The appellate court concluded that an accomplice instruction would not have been proper because the boyfriend was not an accomplice. Id.
 {¶ 26} Similarly, an accomplice instruction would not have been proper in the case before us. Helen Nelson was charged with child endangering for failing to report the abuse. Basically, her offense was believing her boyfriend over her grandchildren. She did not have the requisite mental state for an accomplice; nor did she aid or abet appellant in his acts of rape and gross sexual imposition. As such, the court properly refused to give the accomplice instruction under R.C. 2923.03(D). Thus, there was no error here whether we review under plain error or under the assumption that he preserved this issue for appeal. This assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 27} Appellant's second assignment of error contends:
 {¶ 28} "THE TRIAL COURT ERRED WHEN IT ALLOWED KATHRYN SHARIFF TO TESTIFY TO APPELLANT PARKER'S PRIOR BAD ACTS IN VIOLATION OF OHIO RULE OF EVIDENCE 404(B)."
 {¶ 29} We shall commence with our standard of review. Pursuant to Evid.R. 103(A)(1), error may not be predicated upon a ruling which admits evidence unless a substantial right of the party is affected and a timely objection or motion to strike appears of record stating the specific ground of objection, if the specific ground was not apparent from the context. See, also, Crim.R. 52(A). A trial court's discretionary decision to admit prior bad acts evidence under Evid.R. 404(B) is only reviewed for an abuse of discretion. State v. Moore, 7th Dist. No. 02CA152,2004-Ohio-2320, ¶ 39. We do not substitute our judgment for that of the trial court on such matters unless, after considering the totality of the circumstances, we find that the court's decision was unreasonable, unconscionable, or arbitrary and that it materially prejudiced the defense. See id.
 {¶ 30} Appellant complains that the trial court should have sustained his objection to testimony presented by Kathryn Shariff, the children's mother. She began to say, "Mr. Parker had messed around with my privates and everything," when defense counsel objected. (Tr. 127). An off-the-record discussion was held, and the court overruled the objection. She then continued, "I was only nine or ten when it happened to me." (Tr. 127). Appellant contends that admission of this accusation against appellant violates the following rule of evidence dealing with character:
 {¶ 31} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B). See, also, R.C.2945.59 (making exceptions for motive, intent, absence of mistake or accident, scheme, plan, or system); R.C. 2907.02(D) (excluding defendant's sexual activity not encompassed by R.C. 2945.59); 1980 Staff Note to Evid.R. 404(B) (stating that the rule is in accordance with the statute), citing State v. Curry (1975),43 Ohio St.2d 66.
 {¶ 32} Before applying the rule, we must further review the context of the disputed testimony. During cross-examination of the social worker, defense counsel noted that appellant was repeatedly asked during his taped statement how the children could have such detailed descriptions of various sexual acts if their claims were untrue. (Tr. 72). Counsel inquired whether the children had exposure to sex from other sources, asking, "And in that interview you learned from [child A] that, in fact, her mother had exposed her to sexual activity; am I correct?" The social worker agreed, and the state objected. (Tr. 74). A recorded discussion was then held outside the jury's presence.
 {¶ 33} The state urged that any testimony about child A's sexual activity is protected under the rape shield law of R.C.2907.02(D). The defense responded that he wanted to respond to the detective's repeated suggestions on the taped interview that the children must be telling the truth because how else could they arrive at such detailed descriptions. The defense argued the state opened the door to this subject by playing a tape where the detective repeatedly inquired into the source of the sexual knowledge. (Tr. 76-78). Although the rape shield statute only has an exception for evidence of the victim's sexual activity to show the source of semen, pregnancy, or disease or the victim's past sexual activity with the offender, the defense urged admissibility to show the source of the child's sexual knowledge.
 {¶ 34} The court asked, "Isn't this as advantageous to [the state] as it might appear to be disadvantageous * * *?" (Tr. 80). The state then advised that if the court allowed in the testimony regarding child A's mother exposing her to sexual activity, then the state would offer the mother's testimony that appellant also performed sexual acts on the mother when she was a child to explain the mother's confusion concerning sexual propriety. (Tr. 80). The state noted that it was not originally going to offer this other acts evidence but now believed that the door was open for it and that it was admissible to show a pattern. (Tr. 80-81).
 {¶ 35} When asked by the court if the door would then be open to the mother's testimony of her experience with appellant, defense counsel did not really respond to the question. The court then allowed the testimony on child A's prior exposure to sexual acts and reserved ruling on the admissibility of the mother's experience with appellant. (Tr. 82-83).
 {¶ 36} The social worker continued to testify that child A told her that her mother took her to her place of employment at Mountaineer Park in West Virginia and had sex with a man in a vehicle in front of child A. (Tr. 87). She stated that the man then performed some sexual acts on child A in the presence of the mother. (Tr. 87-88). She also noted that charges were filed against the mother and the man as a result. (Tr. 88).
 {¶ 37} When the mother, Kathryn Shariff, was called to testify, the state asked the mother to explain what happened in West Virginia. The mother stated that she had sexual intercourse with a man in the front seat of her vehicle in front of sixteen-year-old child A, who was in the back seat. (Tr. 126). When asked why she would do that with her daughter in the car, she responded:
 {¶ 38} "A. Well, the way I was raised I thought maybe that was right because it had happened to me. I mean —
 {¶ 39} "Q. Was this a teaching experience?
 {¶ 40} "A. Yes.
 {¶ 41} "Q. What happened to you?
 {¶ 42} "A. Well, Mr. Parker had messed around with my privates and everything —"
 {¶ 43} At this point, defense counsel objected, and an off-record discussion was held. The court overruled the objection, and Kathryn Shariff continued as follows:
 {¶ 44} "A. When I was a child. And I was only nine or ten when it happened to me. "Q. And who was the other person involved with you at that time?
 {¶ 45} "A. Mr. Parker." (Tr. 127).
 {¶ 46} Now, we must determine whether the court erred in admitting Kathryn Shariff's revelation of appellant's prior act of "messing around with [her] privates" when she was nine or ten. Appellant argues that her testimony does not fit into one of the exceptions for admitting evidence of other acts. The state agrees but urges that the list is non-exclusive and that appellant opened the door.
 {¶ 47} First, we note that the statute provides that other acts are not admissible to prove character in order to show that the actor acted in conformity with his prior act and then lists exceptions. However, the disputed evidence here was not offered to prove appellant's character. Rather, it was as explanation for the mother's strange sexual behavior and possibly to rehabilitate her character deterioration.
 {¶ 48} The Supreme Court has stated in the past that "Evid.R. 404(B) permits `other acts' evidence for `other purposes'including but not limited to certain enumerated issues." Statev. Smith (1990), 49 Ohio St.3d 137, 140 (emphasis added). And, the Staff Note to Evid.R. 404(B) provides:
 {¶ 49} "The rule does permit the use of such evidence for other purposes. In a non-exclusive listing, the rule sets forth the purposes of showing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 50} Thus, some courts allow other acts evidence even if its admission does not fit a listed exception, as long as there is a purpose to the testimony other than to prove character. A plain reading of the rule supports this conclusion.
 {¶ 51} Yet, since its statement about non-exclusivity inSmith, the Supreme Court has since refocused its analysis solely on the exceptions, holding that evidence of other acts is admissible only if: (1) there is substantial proof that the defendant committed the other act and (2) the evidence tends to prove one of the listed exceptions. State v. Lowe (1994),69 Ohio St.3d 527, 530, citing State v. Broom (1988),40 Ohio St.3d 277, 282-283. In strictly construing the rule, the Supreme Court thus essentially assumes that all "other acts" evidence necessarily tries to prove character and propensity and that regardless of its intended admission purpose, it cannot be admitted without meeting the aforementioned two-part test. See id. This may be based on their warnings that other acts evidence is inflammatory and could incite a conviction based upon past misconduct. See, e.g., State v. Allen (1987), 29 Ohio St.3d 53,55.
 {¶ 52} Nevertheless, even if it would normally be error to admit the evidence at issue here, the state warned that if the defense insisted on bringing in inadmissible other acts regarding the child-victim's unrelated past sexual activity, then the state would present this testimony regarding appellant. Notwithstanding this warning, the defense believed it necessary to introduce the other acts occurring in West Virginia merely as an explanation as to how child A, a seventeen year old high school student, could have attained general sexual knowledge. As the state urges, the defense opened the door to the state's elicitation of the mother's statement.
 {¶ 53} Moreover, under the harmless error doctrine, the court can disregard an error that does not affect a substantial right. Crim.R. 52(A). More specifically, evidentiary errors are not reversible unless they affect substantial rights. Evid.R. 103(A). Non-constitutional error is harmless if there is substantial other evidence to support the guilty verdict. State v. Keenan
(1998), 81 Ohio St.3d 133, 142. If the appellate court does not find that the admission affected the outcome, then reversal is not warranted. State v. Fisher, 99 Ohio St.3d 127,2003-Ohio-2761, ¶ 7.
 {¶ 54} Here, the grandmother admitted receiving two prior reports of sexual abuse from the children. Appellant lived with these children for years and had ample opportunities to be alone with them. There was compelling testimony from child A, who was eighteen at the time of trial, that appellant forced her to submit to vaginal and oral sex over a continuing period of her childhood and teenage years. There was also clear testimony from child B, who was seventeen at the time of trial, that appellant raped her. In fact, child A and child B had each been witness to some of each other's rapes. Finally, child C, who was thirteen at the time of trial, also gave convincing testimony that appellant engaged in sexual contact with her when she was twelve. All three children presented credible and trustworthy portrayals of their experiences with appellant. The details they presented were more than details about sex in general but were about various items in appellant's bedroom used in their abuse and seized under a warrant, such as petroleum jelly, Playboy magazines, and massagers with attachments.
 {¶ 55} There was more than substantial other evidence to support the guilty verdicts in this case. The disputed testimony of Kathryn Shariff was not outcome-determinative. As such, any error in admitting her testimony on other acts is harmless. This assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER THREE {¶ 56} Appellant's third assignment of error argues:
 {¶ 57} "THE STATE FAILED TO PROVE THE REQUIRED FORCE ELEMENT OF R.C. 2907.07(A)(2) ON COUNTS 2 AND 3 BEYOND A REASONABLE DOUBT THEREBY VIOLATING APPELLANT PARKER'S DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT."
 {¶ 58} Sufficiency of the evidence is a legal question which asks whether there is adequate evidence to even give the case to a jury to determine the weight of the evidence. State v.Thompkins (1997), 78 Ohio St.3d 380, 386. A conviction will not be reversed based upon insufficient evidence unless the reviewing court finds that after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found that the elements of the offense were proven beyond a reasonable doubt. State v. Goff (1998), 82 Ohio St.3d 123, 138.
 {¶ 59} This assignment of error only relates to counts two and three. These counts involve rape under R.C. 2907.02(A)(2), which states: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." The only element contested here is "force or threat of force." Appellant contends that there was no evidence of force or threat of force. Appellant acknowledges Ohio Supreme Court precedent establishing that a person in a position of control over a child can be found to have threatened force even without express threat of harm or force. However, he tries to distinguish his case from those decided by the Supreme Court, noting that he was not in a parental relationship with these children and the children are not of tender age.
 {¶ 60} In a case involving a father's rape of his four-year-old daughter, the Supreme Court found the force element could be satisfied even without actual force or express threats.State v. Eskridge (1988), 38 Ohio St.3d 56, 59. They emphasized the obligation of obedience to a parent and the implication of punishment for refusal to obey a parent's command especially when coupled with a young and vulnerable child. Id. They also mentioned consideration of the relative size, strength, and ages of the victim and the defendant. Id.
 {¶ 61} The Court later extended its holding to non-parental caregivers who are in a position of authority over the child.State v. Dye (1998), 82 Ohio St.3d 323. In that case, a man raped a nine-year-old boy whom he often babysat. The boy's mother instructed him to obey the man while she was gone. The man told the boy what acts to perform and told him to keep the sex a secret. The Court concluded that the man was clearly the child's authority figure at the time of the rape. Id. at 329. The Court found that force under the rape statute can be subtle and psychological. Id. at 327.
 {¶ 62} The Court's holding was based, however, on the offense dealing with a child under the age of thirteen for purposes of a life sentence. Id. Whereas counts two and three here involve children thirteen or older.
 {¶ 63} In another case, the Court found the state did not prove the force element in a case where a twenty-year-old female stated that her father raped her and the only evidence of force was a background of incest. State v. Schaim (1992),65 Ohio St.3d 51. Although the Court refused to apply the position of authority rule in such case, they relied on the fact that the victim was an adult at the time of the charged rape.
 {¶ 64} As aforementioned, appellant claims that the children were seventeen and sixteen and thus would not be swayed by him as an authority figure. However, his age recitation is incorrect. Child B was fifteen during the rapes on which the charge was based. Child A was raped over a continuing course of conduct from age thirteen through age sixteen under count two. And, count one dealt with the rapes prior to child A turning thirteen, when she was as young as nine. Thus, there was a pattern of rape since the time when she was a child of tender years. And, unlike theSchaim case, neither child was an adult when the rapes at issue occurred.
 {¶ 65} Moreover, child A was classified as mildly to moderately mentally retarded with speech and language delays and social and emotional difficulties. (Tr. 33). Her teacher explained that child A had deficiencies in problem-solving, critical thinking, and deciding what to do in certain situations. (Tr. 39). Appellant admitted that child A was "slow," noting that she had only first grade reading and math skills. (Audiotape of appellant's statement). Additionally, this child mentioned that she could not read. (Tr. 247). Her teacher noted that child A was still working on using a telephone. (Tr. 39).
 {¶ 66} The children lived in a house for over eight years that appellant claims to jointly own. Appellant was their grandmother's boyfriend of close to thirty years. Their grandmother was actually also the adoptive mother of three of these children and the acting mother for all of them. Child B stated that she considered him her grandfather. (Tr. 149). All of the children called him "pap" and "grandpap." He described himself as helping Helen raise her grandchildren, and he described the children as his "grandkids." (Audiotape).
 {¶ 67} Furthermore, he provided them with money for field trips and outings. Id. He disciplined them, made rules, and enforced chores. Id. For instance, he warned child A about "house rules" and insisted she obey them as long as she lived under their roof. Id. He lectured her on "attitude adjustment." Id. He counseled her about staying in school after she turns eighteen. Id. Appellant basically acted as the father of these children. Clearly appellant held a position of authority over these children.
 {¶ 68} Finally, he told both children not to tell anyone. Child B disclosed that he said they would both get in trouble if she told. (Tr. 153). He told child A she would be taken away if she told anyone. (Tr. 249). He made child A block the bedroom door so the two younger children would not see him having sex with child B and vice versa. (Tr. 155-156).
 {¶ 69} However, we need not actually conclude whether the threat of force element could be satisfied solely by appellant's position of authority over these children. Rather, our decision upholding the force element is based upon the fact that there was actual and overt force used here, contrary to the claims in appellant's brief. Force is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A).
 {¶ 70} Both child A and child B, the subjects of counts two and three, testified that appellant physically forced himself on them. Child A disclosed that she told appellant to stop but this did not always work. (Tr. 241-242). She stated, "I pushed him but he wouldn't get off me. * * * He wouldn't get off." (Tr. 242). Child B revealed that she tried to make him stop by kicking him and pushing him with her feet. (Tr. 152). She was even able to push him off once or twice, but he continued despite her attempts to thwart him. (Tr. 152-153). These testimonials constitute sufficient evidence of compelling sex with compulsion or constraint.
 {¶ 71} Appellant's act of penetrating his grandchild-like teenager while that child is pushing him and begging him to stop constitutes force. Likewise, his act of penetrating his other grandchild-like teenager while she is kicking him, pushing him with her feet, and sometimes actually succeeding in pushing him off only to have him mount her again is force. Construed in the light most favorable to the state, a reasonable person could find the element of force or threat of force was proven beyond a reasonable doubt by such claims. This assignment of error is overruled.
 {¶ 72} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Donofrio, P.J., concurs.
Waite, J., concurs.