[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
[1] The recitation of facts and a portion of the discussion of appellant's assignments of error substantially overlaps with two companion cases (see State v. Hairston, Scioto App. No. 06CA3089 andState v. Hairston, Scioto App. No. 06CA3081).
 DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Scioto County Common Pleas Court judgment of conviction and sentence. A jury found Jovaughny Hairston, defendant below and appellant herein, guilty of aggravated burglary in violation of R.C. 2911.11(A)(1); aggravated robbery in violation of R.C.2911.01 (A)(1); attempt to commit aggravated murder in violation of R.C. 2923.02(A)/R.C. 2903.01; two counts of kidnaping in violation of R.C.2905.01(B); theft in violation of R.C. 2913.02(A)(3); and disrupting public services, in violation of R.C. 2909.04(A)(1). Appellant was also *Page 2 
found to have used a firearm in the commission of these offenses.
Appellant assigns the following errors for review:
 FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN NOT GRANTING THE APPELLANT'S MOTION FOR A MISTRIAL PRIOR TO TRIAL, WHEN THE JURY POOL WAS TAINTED DURING VOIR DIRE."
 SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED BY PERMITTING THE TESTIMONY OF PRIOR ACTS AT THE APPELLANT'S TRIAL THAT WERE MORE PREJUDICIAL THAN PROBATIVE."
 THIRD ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN NOT GRANTING THE APPELLANT'S MOTION FOR A MISTRIAL DURING TRIAL WHEN THE COURT BAILIFF TOLD SOME JURORS THAT THE APPELLANT WAS TRYING TO INTIMIDATE THEM."
 {¶ 2} Ralph and Marcia Melcher own and operate Melcher Funeral Home at 1417 Offnere Street in Portsmouth. The Melchers live on the second floor, directly above the funeral home. In May 2004, a burglary occurred at the residence while the Melchers slept. Although the perpetrator(s) escaped, subsequent tests revealed Marquis Hairston's DNA on cigarette butts left at the premises.
 {¶ 3} On September 29, 2005, during the early morning hours, the Melchers awoke to find three men standing around their bed. The men ordered the couple to kneel as they searched for valuables. After ransacking the residence, the men ordered the Melchers to the living room, ordered them to remove their clothing and then tied them to chairs. One man groped Mrs. Melcher and indicated that a sexual assault was about to occur. This action prompted the couple to fight the intruders. *Page 3 
Startled, two of the men fired their pistols at the Melchers and quickly fled the residence.
 {¶ 4} The couple managed to untie themselves and Marcia found the only working telephone in the residence to call 911.[2] After emergency transport to the hospital, the Southern Ohio Medical Center (SOMC) staff determined that the couples' injuries were severe and that they should be stabilized and taken to Grant Medical Center in Columbus. Also, before leaving SOMC, catholic priests performed "last rites" on the couple.[3]
 {¶ 5} Portsmouth police investigated the crime and followed several leads. Meanwhile, in the German Village area of Columbus a string of robberies had striking similarities to the Melcher incident. Robbery victims in those cases were forced to remove their clothing and were tied to chairs.
 {¶ 6} Marquis, Louis and Jovaughney Hairston were eventually arrested for the Columbus burglaries after stolen property was found in local pawn shops and traced to them.[4] Marquis confessed to all three break-ins. Louis denied he had anything to do with the break-ins, but did admit he sold stolen property from those *Page 4 
homes at various pawn shops. Jovaughney, appellant herein, confessed to one Columbus burglary but not the other two.[5]
 {¶ 7} In October 2005, a Portsmouth Police clerk was speaking on the telephone with an insurance adjuster when the clerk mentioned the Melcher robbery. The insurance adjuster mentioned the similarities to the German Village robberies. Around the same time, Portsmouth police received a "CODAS hit" that matched DNA taken from Marquis Hairston to the Melcher robbery DNA.[6]
 {¶ 8} On January 31, 2006, the Scioto County Grand Jury returned an indictment that charged appellant with aggravated burglary, aggravated robbery, two counts of attempt to commit aggravated murder, two counts of kidnaping, gross sexual imposition, theft and disrupting public services. All nine counts carried a firearm specification. Appellant pled not guilty to all charges.
 {¶ 9} At trial, the perpetrators' identification was the primary issue. Ralph and Marcia Melcher testified that the Hairstons broke into their home and terrorized them. They also admitted, however, that the perpetrators partially obscured their faces. Evidence also indicated that the Melchers had trouble identifying the Hairstons from a photographic lineup and that they first reported their attackers as either hispanic or African-American (the Hairstons are African-American). Marcia *Page 5 
Melcher also conceded that her recollection was "foggy," except for her identification of the perpetrators.
 {¶ 10} In the end, the jury found the Melchers were credible and returned verdicts against all three Hairstons. The jury specifically found appellant guilty of all charges except gross sexual imposition and one count of attempt to commit aggravated murder. The jury also found that appellant committed these offenses with a firearm.
 {¶ 11} The trial court sentenced appellant to serve seven years in prison for aggravated burglary, eight years for aggravated robbery, ten years for his attempt to commit aggravated murder, six years on each kidnaping charge, one year for theft and one year for disruption of public services. Appellant also received a mandatory three year sentence on the gun specification. The court ordered that the sentences be served consecutively to each other and appellant will be confined in prison for an aggregate sum of forty-one (41) years. This appeal followed.
 I {¶ 12} Appellant's first assignment of error asserts that the trial court erred by not granting a motion for mistrial made after the court empaneled the jury, but before the actual commencement of the proceedings. At trial appellant argued that the jury pool was tainted because during voir dire, several prospective jurors made remarks that prejudiced his right to a fair trial. Those remarks allegedly included one potential juror's comments that he had heard "three black guys" committed *Page 6 
the crimes; comments by another potential juror that the Hairstons must be "guilty" because the grand jury had indicted them; and statements by others that they had read newspaper accounts of the incident or are related or know the Melchers. One potential juror, when asked if he could put aside the newspaper account and base his decision only on facts adduced at trial, said that he would "try" to do so. Appellant claims that these remarks prejudiced him with the remaining members of the jury pool. We disagree.
 {¶ 13} The decision whether to grant a mistrial lies in the trial court's discretion and will not be reversed absent an abuse of discretion. See State v. Ahmed, 103 Ohio St.3d 27, 813 N.E.2d 637,2004-Ohio-4190, at ¶ 92; State v. Brown, 100 Ohio St.3d 51,796 N.E.2d 506, 2003-Ohio-5059, at ¶ 42. An abuse of discretion is much more than an error of law or judgment; rather, it implies that the court's attitude was unreasonable, arbitrary or unconscionable. See State v.Clark (1994), 71 Ohio St.3d 466, 470, 644 N.E.2d 331, 335; State v.Moreland (1990), 50 Ohio St.3d 58, 61, 552 N.E.2d 894, 898. In reviewing for an abuse of discretion, appellate courts must not substitute their judgment for that of the trial court. See State ex rel. Duncan v.Chippewa Twp. Trustees (1995), 73 Ohio St.3d 728, 732, 654 N.E.2d 1254;In re Jane Doe 1 (1991). 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181. Generally, to establish an abuse of discretion, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, *Page 7 
and not the exercise of reason but instead passion or bias.Vaught v. Cleveland Clinic Found., 98 Ohio St.3d 485, 787 N.E.2d 631,2003-Ohio-2181, ¶ 13; Nakoff v. Fairview Gen. Hosp. (1996),75 Ohio St.3d 254, 256, 662 N.E.2d 1.
 {¶ 14} At the outset we first note that none of the potential jurors cited in appellant's brief were empaneled to sit on the final jury. Therefore, the pivotal issue is whether remarks from those individuals prejudiced appellant with the remaining venire. Appellant cites nothing in the record to demonstrate that these remarks biased or prejudiced the empaneled jurors other than the fact that the remarks occurred. Generally, prejudicial effect is not presumed, but must be affirmatively shown of record. See State v. Treesh (2001), 90 Ohio St.3d 460, 464,739 N.E.2d 749; also see State v. Feagin, Richland App. No. 05CA1,2006-Ohio-676, at ¶ 23 (party challenging a jury panel has burden of showing the jury cannot be fair and impartial). Here, appellant has made no showing of bias or prejudice.
 {¶ 15} We also are not persuaded the remarks are so egregious as to presume to prejudice. Obviously, the incident at the funeral home resulted in media coverage. However, reading a newspaper article or viewing a television report, does not necessarily require a determination that a prospective juror cannot be fair and impartial. Rather, a defendant must affirmatively establish that media coverage actually biased one or more empaneled jurors, State v. King, Lorain App. No. 04CA8577, 2005-Ohio-4259, at ¶ 45. Appellant has not satisfied that burden in this case. *Page 8 
 {¶ 16} Likewise, we find nothing to suggest that the entire venire was prejudiced simply because some potential jurors, who were, in fact, subsequently dismissed, knew the Melchers. Again, an affirmative showing of bias or prejudice must be established. None has been shown here.
 {¶ 17} Similarly, a potential juror's remark about hearing "three black guys" committed a crime does not taint the entire jury pool. This juror did not identify appellant and we do not believe that his remark caused appellant prejudice. Nor do we believe that the entire jury pool was tainted because a few potential jurors could not put aside preconceived biases and base their verdicts on the facts adduced at trial. Any jury pool may contain one or more potential jurors who have preconceived ideas about a particular defendant's guilt, and sometimes little can be done to change their opinions. However, those individuals are appropriately dismissed from the venire pursuant to the established rule of criminal procedure. If, however, remaining jury pool members indicate that they can be fair and base their decision soley on the facts presented at trial, no reason exists to dismiss the entire pool.
 {¶ 18} Thus, because appellant has not established actual bias or prejudice, we find no abuse of discretion in the trial court's decision to overrule appellant's pre-trial motion for mistrial. Accordingly, we hereby overrule appellant's first assignment of error.
 II *Page 9 {¶ 19} Appellant asserts in his second assignment of error that the trial court erred by allowing evidence concerning the German Village robberies. In particular, appellant claims that this evidence violated the Evid.R. 404(B) restriction against the admission of evidence concerning other crimes. We disagree.
 {¶ 20} Evid.R. 404(B) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as . identity . . ." (Emphasis added.) The admissibility of other acts evidence is carefully limited because a substantial danger exists that a jury may convict solely because it assumes that a defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment. This danger increases when the other acts are similar to the charged offense, or are of an inflammatory nature as is in the case here. State v. Schaim (1992), 65 Ohio St.3d 51,59, 600 N.E.2d 661. Nevertheless, evidence of other crimes may be admissible when integral to the identification of a perpetrator. SeeState v. Lott (1990), 51 Ohio St.3d 160, 169, 555 N.E.2d 293; also seeState v. Vasson, Cuyahoga App. No. 88069, 2007-Ohio-1599, at ¶ 18;State v. Kellon (Sep. 20, 2001), Cuyahoga App. No. 78668. In the case sub judice, both victims identified the Hairstons as the men in their bedroom in the early hours of September 29 . Defense counsel vigorously challenged that identification and questions about the *Page 10 
amount of light in the residence, the assailants' clothing as well as the perpetrators' initial misidentification.[7]
 {¶ 21} Under the circumstances present in the case at bar, we believe that the trial court properly allowed evidence of the Franklin County crimes to establish similarities to the Melcher robbery and to establish the perpetrators' identity. In those cases the perpetrators ordered the victims to remove their clothing, and tied the victims to chairs with articles of clothing.[8] Also, Brenda Walker of the Columbus Police Department testified that in her eighteen years of experience, it is highly unusual for victims to be stripped of their clothing and be tied to chairs with articles of their own clothing.
 {¶ 22} After we consider the similarities between the German Village robberies and the Melcher home-invasion, we agree with the trial court's conclusion to allow the other acts evidence to establish identity. This is particularly true in light of the fact that two victims (Cynthia Green and Melanie Pinkerton) identified appellant as one of the men in their homes.[9] *Page 11 
 {¶ 23} Again, the decision to admit Evid.R. 404(B) prior acts evidence rests in a trial court's sound discretion and that decision should not be reversed absent an abuse of discretion. State v. Parker, Columbiana App. No. 04CO44, 2005-Ohio-6777, at ¶ 20; State v. Hammond, Cuyahoga App. No. 85001, 2005-Ohio-1852, at ¶ 55; State v. Moore, Mahoning App. No. 02CA152, 2004-Ohio-2320, at ¶ 39. In the case sub judice, considering Officer Walker's testimony about the unique characteristics of the four robberies, we find nothing arbitrary, unreasonable or unconscionable in the trial court's decision to admit this evidence. We also commend all three defense counsel, the prosecution and the trial court for devoting to this issue very careful and thoughtful consideration.
 {¶ 24} Accordingly, based upon the foregoing reasons we hereby overrule appellant's second assignment of error.
 III {¶ 25} Appellant asserts in his third assignment of error that the trial court erred by failing to grant a mistrial after an incident that occurred one day when the court recessed for lunch. As the jurors were leaving for lunch, two jurors observed the defendants in restraints. The Hairstons then began to yell and to make gestures to draw attention to themselves. Later, the jurors were reassured that the Hairstons were simply "trying to intimidate" them. Although the two jurors who observed the Hairstons were later dismissed from the jury, appellant argues that the remainder of the jury panel was tainted as well and the *Page 12 
trial court should have granted a mistrial. We reject appellant's argument.
 {¶ 26} As the prosecution correctly points out, a brief, inadvertent sighting of a defendant in handcuffs is not usually prejudicial. SeeState v. McKnight, 107 Ohio St.3d 101, 837 N.E.2d 315, 2005-Ohio-6046, at ¶ 219; State v. Kidder (1987), 32 Ohio St.3d 279, 285-286,513 N.E.2d 311. Further, once this particular incident came to the trial court's attention, the judge questioned every member of the jury panel and actually excused two members. The court also instructed the remaining jurors that they must not consider any evidence from "outside" the courtroom. Curative instructions are generally presumed to remove any prejudice. McKnight, supra at ¶ 220; State v. Garner (1995),74 Ohio St.3d 49, 59, 656 N.E.2d 623.
 {¶ 27} Finally, some evidence exists to indicate that the defendants may have actually engineered the juror sighting. Bailiff Terry Minch informed the trial court that the defendants called out to the jurors to see them in their "shackles and chains." They then chanted "tainted jury, mistrial, tainted jury" so that everyone in the "mezzanine area" could hear them. Suffice it to say, defendants must not manipulate or attempt to manipulate the judicial system. If the defendants purposely brought their restraints to the attention of the jury to attempt to engineer a mistrial, they should not be rewarded for their actions.
 {¶ 28} In the end, the decision to grant a mistrial rests in a trial court's discretion and should not be reversed absent an *Page 13 
abuse of discretion. See State v. Ahmed, 103 Ohio St.3d 27,813 N.E.2d 637, 2004-Ohio-4190, at ¶ 92; State v. Brown, 100 Ohio St.3d 51,796 N.E.2d 506, 2003-Ohio-5059. Here, we do not believe that the trial court abused its discretion. To the contrary, our review reveals that the trial court went to great lengths to ensure that the jury panel was not tainted, despite the actions of appellant and his co-defendants.
 {¶ 29} Accordingly based upon these reasons, we find no merit in the third assignment of error and it is hereby overruled.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
[2] The intruders disabled all but one telephone in the home which was hidden behind a decorative box.
[3] Ralph Melcher was shot in his right eye and neck. He now has an artificial eye. Bullet fragments also lodged in his neck, sinuses and bowel. Marcia Melcher was shot five times — once in her face, twice in her arms, once in her knee and once in her shoulder. The shoulder injury permanently damaged her breakial plexis and she now must keep her arm in a sling when she walks.
[4] The relationship between the three is not entirely clear from the record, but it appears that Marquis and Louis are either brothers or half-brothers, and Jovaughney is their cousin.
[5] Appellant admitted to involvement with the break-in at Cynthia Green's home.
[6] Portsmouth Police Detective Lynn Brewer explained that "CODAS" is a nationwide DNA database.
[7] One of the perpetrators was described as "husky" or obese and none of the Hairstons fit that description. Furthermore, the Melchers thought one or more of the perpetrators might have been Hispanic. All three defendants are African-American.
[8] Ralph Melcher testified the Hairstons used scarves to tie him up. Cynthia Green testified that her assailants used bathrobe ties and belts. Melanie Pinkerton explained that neck ties were used on her. John Maransky recalled that he was tied up with scarves and neck ties.
[9] Although Cynthia Green and Melanie Pinkerton both identified appellant as one of the men who broke into their German Village homes, their testimony also included detailing the substantial similarities to the Melcher robbery. *Page 1