[Cite as *State v. Black*, 2017-Ohio-3001.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 16AP-405<br>(M.C. No. 2016 CRB 7169) |
| | | & |
| v. | : | No. 16AP-406<br>(M.C. No. 2015 CRB 30259) |
| Robert N. Black, III, | : | |
| Defendant-Appellant. | : | (REGULAR CALENDAR) |

D E C I S I O N

Rendered on May 25, 2017

**On brief:** *Richard C. Pfeiffer, Jr.*, City Attorney, *Melanie R. Tobias*, and *Orly Ahroni*, for appellee. **Argued:** *Orly Ahroni.*

**On brief:** *Brehm & Associates*, and *Robert J. Beck, Jr.*, for appellant. **Argued:** *Robert J. Beck, Jr.*

APPEALS from the Franklin County Municipal Court

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Robert N. Black, III, appeals from his domestic violence convictions in the Franklin County Municipal Court. For the following reasons, we affirm.

## I. Factual and Procedural Background

{¶ 2} This appeal arises from two cases in the Franklin County Municipal Court. In case No. 2015 CRB 30259, Black was charged with committing domestic violence in violation of R.C. 2919.25(A), a misdemeanor of the first degree, and assault in violation of R.C. 2903.13(A), a misdemeanor of the first degree. The criminal complaints in case No. 2015 CRB 30259 alleged that on December 31, 2015, Black assaulted his father, Robert N. Black, Jr. In case No. 2016 CRB 7169, Black was charged with committing domestic

violence in violation of R.C. 2919.25(A), a misdemeanor of the first degree, and assault in violation of R.C. 2903.13(A), a misdemeanor of the first degree. The criminal complaints in case No. 2016 CRB 7169 alleged that on April 2, 2016, Black again assaulted his father. Black pleaded not guilty in both cases. The trial court approved Black's request to represent himself at trial, and it consolidated the two cases for the purpose of trial.

{¶ 3} Black did not post bond and thus was in custody during the trial court proceedings. The parties dispute whether Black was physically restrained by shackles when he appeared before the jury. The portions of the record relating to the shackling of Black are detailed below as part of our analysis of Black's sole assignment of error.

{¶ 4} At trial the state presented evidence demonstrating that on both December 31, 2015 and April 2, 2016, Black assaulted his father. Following deliberations, the jury found Black guilty as charged. The domestic violence and assault convictions merged for the purpose of sentencing, and, based on the state's election, the trial court proceeded to sentence Black on the domestic violence counts in each case.

{¶ 5} Black timely appeals from his convictions.

## II. Assignment of Error

{¶ 6} Black assigns the following error for our review:

> The trial court did err by ordering the defendant to appear
> before the jury in visible shackles.

## III. Discussion

{¶ 7} In his sole assignment of error, Black asserts the trial court erred in ordering him to appear before the jury in visible shackles. The due process guarantees embodied in the Fifth and Fourteenth Amendments to the United States Constitution forbid the use of visible shackles during trial unless their use is justified by an essential state interest, such as where there is danger of violence or escape. *Deck v. Missouri*, 544 U.S. 622, 624 (2005); *State v. Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304, ¶ 79. Visible shackling undermines the presumption of innocence and the related fairness of the fact-finding process. *Deck* at 630; *see Franklin* at ¶ 79 (noting that the presence of restraints tends to erode the presumption of innocence that the justice system attaches to every defendant). The use of shackles also can interfere with a defendant's ability to participate in his own defense and undermine the formal dignity of the judicial process. *Deck* at 631.

Thus, no defendant should be tried while shackled, except as a last resort. *State v. Chester*, 10th Dist. No. 08AP-1, 2008-Ohio-6679, ¶ 5, citing *Illinois v. Allen*, 397 U.S. 337, 344 (1970).

{¶ 8} The decision of whether to shackle a criminal defendant during trial lies within the sound discretion of the trial court. *Chester* at ¶ 5. "[W]here a court, without adequate justification, orders the defendant to wear shackles that will be seen by the jury, the defendant need not demonstrate actual prejudice to make out a due process violation. The State must prove 'beyond a reasonable doubt that the [shackling] error complained of did not contribute to the verdict obtained.' " *Deck* at 635, quoting *Chapman v. California*, 386 U.S. 18, 24 (1967). Shackling a defendant in plain view of the jury has been considered "inherently prejudicial." *State v. Irwin*, 184 Ohio App.3d 764, 2009-Ohio-5271, ¶ 235 (7th Dist.). However, if a jury briefly and inadvertently views a defendant in handcuffs, the defendant must demonstrate actual prejudice. *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 219; *see State v. Kidder*, 32 Ohio St.3d 279, 286 (1987) ("[T]he danger of prejudice to defendants is slight where a juror's view of defendants in custody is brief, inadvertent and outside of the courtroom."). *See also State v. Henderson*, 11th Dist. No. 2010-T-0095, 2012-Ohio-740, ¶ 70 ("a brief, inadvertent sighting of the defendant in shackles will not result in a due process violation unless actual prejudice can be shown"); *State v. Hairston*, 4th Dist. No. 06CA3087, 2007-Ohio-4159, ¶ 26 ("[A] brief, inadvertent sighting of a defendant in handcuffs is not usually prejudicial.").

{¶ 9} Here, Black asserts he was required to wear visible leg shackles before the venire, despite the absence of a court finding that such a precaution was necessary. Black's cases were scheduled for trial on April 25, 2016, and Black appeared in court on that date "dressed in handcuffs and in inmate garb" because he had not posted bond and remained in custody. (Apr. 25, 2016 Tr. at 15.) Black expressed concern to the court regarding his attire and his physical restraints. He requested that his "first impression to the jury not be [of him] in ankle and hand irons and inmate gear." (Apr. 25, 2016 Tr. at 15.) The prosecutor responded by stating:

> So if the defendant wants to be in street clothes for his initial
> impression to the jurors, I don't have an objection to that. I

just want him to clarify if the defendant is only asking that he be unshackled for his initial appearance in front of the jurors. I also don't object to that, but I want to have -- I want the Court to have that conversation. So if the defendant wants to wait until tomorrow when he's in street clothes to appear in front of the jurors, I have no objection to that, given the fact that he's made the motion. But if he wants to appear as he is now, but without shackles, I also don't have an objection. I just want the Court to clarify with the defendant.

(Apr. 25, 2016 Tr. at 16.) Black then stated: "I am clarifying that I would like my first impression in front of the jury and all other impressions to be in my street clothes and not in my jumpsuit and shackles." (Apr. 25, 2016 Tr. at 16.) The prosecutor responded: "I don't object to that. It sounds like maybe we should begin the voir dire process tomorrow." (Apr. 25, 2016 Tr. at 16.) The court stated: "Okay. Based on that motion, I'm going to grant you that. We will start this tomorrow. * * * You'll be allowed to be in street clothes and have access to the law library per protocols of the jail." (Apr. 25, 2016 Tr. at 16-17.) On the same day, the trial court signed an entry in both cases granting Black access to the law library and stating that he will "be dressed in street clothes."

{¶ 10} During the voir dire proceedings on April 26, 2016, Black made the following statement to the potential jury: "I hope you guys don't mind, but I'm instructed to stay behind the table, so I won't get to do all the walking around that the prosecution does." (Apr. 26, 2016 Tr. at 51-52.) The transcript of the voir dire does not contain any other reference to a restraint on Black's movement. However, on the day following jury selection, April 27, 2016, and before the jury entered the courtroom for preliminary instructions and the parties' opening statements, the court ordered that Black would be unshackled before the jury. The discussion regarding this issue suggests that Black, until that point in time, may have been shackled with leg irons in court, including during his appearance before the jury during voir dire.

{¶ 11} The proceedings on April 27, 2016 began with the state making a motion in limine. After ruling on the motion in limine, the trial court stated, "At this time, we're going to call the jury. We have his shackles on?" (Apr. 27, 2016 Tr. at 34.) The courtroom deputy responded affirmatively. Black then requested that if he was required to stand behind the counsel table "the entire time with [his] shackles," the prosecution should be

restricted to stay behind their counsel table. (Apr. 27, 2016 Tr. at 34.) The prosecutors indicated they did not object "to the unshackling of the defendant," but also acknowledged logistical issues related to Black representing himself, such as where to conduct sidebars. (Apr. 27, 2016 Tr. at 35.) The trial court then stated: "As for sidebar, okay, Mr. Black * * * what I am going to do to entrust upon you -- I am going to unshackle you. Okay? * * * You're going to stay there, though. * * * You are not going to approach the witnesses. * * * This is only for sidebar will you be able to come over here. Okay?" (Apr. 27, 2016 Tr. at 36.) After further explaining the procedure that would be followed in the courtroom relating to Black's movement, the trial court directed the deputies to unshackle him, and they complied. The jury then entered the courtroom for preliminary instructions and opening statements from the prosecution and Black.

{¶ 12} The April 27, 2016 discussions in court regarding Black being in shackles indicates the trial court may not have previously ordered Black's shackles to be removed, thus supporting Black's assertion that he was in shackles during voir dire. Additionally, the court was informed near the conclusion of trial that a juror told the other jurors that he or she had seen Black in shackles on the jury's "first day." The courtroom bailiff reported the following:

> One of the jurors came in early this morning to report to the jury commissioner that one of the other jurors went back in the conference room or in the jury deliberation room yesterday and noticed that the deputies had tasers, and they wanted to know that -- she said that, Wouldn't it be fun to watch Mr. Black be tasered. And they said something about one of them had noticed that he did have shackles on and the woman who reported this indicated that she felt the rest of the jurors kind of felt uncomfortable about that.

(Apr. 28, 2016 Tr. at 198-99.) The bailiff added, "just the one person was doing the speaking; and then another person reported it." (Apr. 28, 2016 Tr. at 199.)

{¶ 13} The court summoned the juror who had referred to a possible tasering into the courtroom for examination. During that examination, the juror stated that she had said to other jurors that she "thought it would be cool to see somebody tased." (Apr. 28, 2016 Tr. at 202.) After the juror recounted her taser comment, the following colloquy occurred:

[The Court]: Okay. And did you mention anything about any of, you know, whether he'd been wearing handcuffs or shackles or leg irons or anything like that? Was there any reference to that?

[Juror]: Someone had said on the first day he was wearing leg irons, which the consensus was that not a lot of people had seen that. And -- Let's see -- Somehow it would -- I don't know who brought it up, but it was -- I had mentioned that, you know, it was nice that they -- if he was in custody, that it was nice that they let him dress professional so that he looks like a member of society and --

[The Court]: And be in street clothes.

[Juror]: Yeah.

(Apr. 28, 2016 Tr. at 203-04.)

{¶ 14} Outside the hearing of the questioned juror, the following discussion occurred:

[Black]: I think it clearly disqualifies this juror. The question is relating to the incident, and the commenting -- It would be interesting to inquire, investigate, or bring out the other jurors to ask if they heard it or if it makes them feel if they can be impartial in their decisions and deliberations. It also seems like it wasn't just one person who saw me in leg irons, but she said --

The Court: I'm sure everybody --

[Black]: Yeah, given those things, do they think they could be a fair and impartial jury? It would be nice to hear from them individually --

[Prosecutor]: I mean --

[Black]: -- given the severity.

The Court: The Court was going to leave you in leg irons, and the likelihood they were going to see you in leg irons was --

[Black]: Probable.

The Court: It was very probable.

[Black]: Right. It's compounded by this conduct, though.

(Apr. 28, 2016 Tr. at 204-05.)

{¶ 15} The state indicated it did not oppose Black's request to substitute the questioned juror with the first alternate juror. The court informed Black: "Just so you know, I'm going to substitute Alternate 1 for her," and then added, "And it was a given that people could see you. Okay?" (Apr. 28, 2016 Tr. at 205-06.) This juror was excused from service, and the court indicated that it would not conduct further inquiry regarding the statements made amongst the jurors. Black stated: "Even if not individually, it would be nice -- just a show of hands to know if the jury still believes they can make an impartial decision." (Apr. 28, 2016 Tr. at 207.) The court brought the jury back into the courtroom and made the following inquiry:

> It came to the Court's attention that something was said in the jury deliberation room yesterday; and because of the statements that were said, the Court felt that it was only proper to remove Juror No. 2. The Court would like to make an inquiry as to the rest of the jurors here whether you feel that you can be fair and impartial in this trial; and if there's anybody who can't, please speak up now.
>
> Okay. Seeing that nobody has spoken up, I believe that you all can be fair and impartial for the rest of the trial. Okay. Everybody satisfied?
>
> (No audible response.)

(Apr. 28, 2016 Tr. at 207-08.)

{¶ 16} Thus, the record indicates that Black may have been forced to wear at least partially visible leg shackles before the venire, despite no finding by the trial court that the shackling was necessary. In reviewing this alleged error, we must determine the standard of review to apply. The use of restraints in the courtroom without justification is not structural error. *Chester* at ¶ 17 ("[A]ny error in shackling a defendant during trial is not a structural error."). Generally, harmless error analysis applies to appellate review of the use of physical restraints on a criminal defendant at trial. *Id.*, citing *Deck.* In the absence of a timely objection, however, we must review the improper use of shackles for plain error. *See State v. Murphy*, 4th Dist. No. 09CA3311, 2010-Ohio-5031, ¶ 40 (plain error analysis is applied when defendant fails to timely object to the use of shackles); *State v.*

*Blacker*, 12th Dist. No. CA2008-07-094, 2009-Ohio-5519, ¶ 38 (failure to object to shackling waives argument on appeal other than plain error).

{¶ 17} If Black was in fact shackled during voir dire despite no trial court finding that the shackling was necessary, he did not preserve the alleged error for appellate review.  As set forth above, the day before voir dire, Black requested that he appear in street clothes without shackles in front of the jury and that he have access to a law library. The court generally granted the multifaceted motion, but then specifically addressed the street clothes and law library issue without mentioning the shackles.  In the entry the court signed authorizing Black to appear in street clothes and have access to a law library, there is no reference to shackling.  Thus, while the court appeared to grant Black's request to appear without shackles, in context, the ruling was unclear.  Either the court granted the motion to appear without shackles or in effect tabled its ruling on that issue.  When it came time the next day for Black to appear before the venire, he did not object to being in leg shackles.  Such an objection would have either alerted the court to rule on the tabled issue, or challenged the court's inconsistency in forcing him to be shackled despite the court's granting of his multifaceted motion the day before.  Therefore, under these particular circumstances, we find Black did not timely object to the trial court's alleged error.  Consequently, he waived all but plain error.

{¶ 18} Under Crim.R. 52(B), an appellate court may take notice of "plain errors" even when "they were not brought to the attention of the court."  For an error to constitute "plain error" under Crim.R. 52(B), it must satisfy three prongs: (1) there must be an error, meaning a deviation from a legal rule, (2) the error must be "plain," meaning an "obvious" defect in the trial proceedings, and (3) the error must have affected "substantial rights," meaning the error must have affected the outcome of the trial.  *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).  An appellate court recognizes plain error with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice.  *State v. Pilgrim*, 184 Ohio App.3d 675, 2009-Ohio-5357, ¶ 58 (10th Dist.), citing *State v. Saleh*, 10th Dist. No. 07AP-431, 2009-Ohio-1542, ¶ 68.  The defendant bears the burden of demonstrating plain error.  *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, ¶ 14. Here, Black has not met that burden.

{¶ 19} While secondhand reporting to the trial court suggested that some of the jurors saw Black in shackles, that reporting also indicated that not all of the jury saw the shackles. Even assuming one or more (but not all) of the jurors saw Black in leg irons during voir dire, the record does not reflect the duration and particular circumstances of that sighting. Those details are left to speculation. Moreover, when it became known to the court and parties that one or more jurors may have seen Black in shackles and reported that observation to the rest of the jury, the trial court inquired of the jury in accordance with Black's request. While Black initially suggested that the jurors be questioned individually, he ultimately requested the court question the jury collectively regarding their ability to remain impartial. Lastly, Black does not challenge the evidence as demonstrating his guilt. Black's convictions were largely based on the testimony of his father, who testified that Black assaulted him on two separate occasions, and, in this appeal, Black does not challenge his father's credibility. For these reasons, we find Black has failed to demonstrate that were it not for trial court error, the results of the trial would have been different. Black's convictions were not a miscarriage of justice.

{¶ 20} Accordingly, we overrule Black's sole assignment of error.

## IV. Disposition

{¶ 21} Having overruled Black's sole assignment of error, we affirm the judgments of the Franklin County Municipal Court. Although we affirm the trial court's judgments, we note that the trial court's judgment entries mistakenly indicate that Black pleaded guilty to domestic violence, and not that a jury found him guilty of domestic violence and assault in both cases. Thus, we remand these matters to that court with instructions that the court correct the clerical errors and file nunc pro tunc entries reflecting that Black was found guilty following a jury trial.

*Judgments affirmed;*
*causes remanded with instructions.*

TYACK, P.J., and DORRIAN, J., concur.