[Cite as *State v. Thomas*, 2018-Ohio-3768.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

JOHN ANTHONY THOMAS, SR.,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 17 BE 0028

---

Criminal Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 16-CR-268

**BEFORE:**
Cheryl L. Waite, Gene Donofrio, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Dan Fry*, Belmont County Prosecuting Attorney and
*Atty. J. Kevin Flanagan*, Assistant Prosecuting Attorney
147-A West Main Street, St. Clairsville, Ohio 43950, for Plaintiff-Appellee

*Atty. Edward Lee Gillison, Jr.*, Gillison & Gillison Law Offices, 3139 West Street,
Weirton, West Virginia 26062-4636, for Defendant-Appellant.

Dated: September 17, 2018

---

**WAITE, J.**

**{¶1}** Appellant John Anthony Thomas, Sr. appeals his convictions for kidnapping and felonious assault in the Belmont County Court of Common Pleas. Appellant raises a number of issues on appeal including: failure to grant a mistrial or sanction for alleged discovery violations, prejudicial error resulting from discovery violations, cumulative error, and merger. For the reasons set forth below, Appellant's assignments of error are without merit and the judgment of the trial court is affirmed.

Facts and Procedural History

**{¶2}** Appellant's wife of 28 years, Jaqueline "Jackie" Thomas ("Mrs. Thomas"), testified that between five and six o'clock on the morning of July 13, 2016, she was awakened by Appellant, profanely demanding she get out of bed. (Tr., pp. 384-385.) Mrs. Thomas testified that Appellant grabbed her by the arm and the hair of her head, causing her to stand and forcibly follow him to the bathroom so that their sleeping grandchild, who remained in the bed, would not be awakened. (Tr., pp. 385-386.)

**{¶3}** Mrs. Thomas testified that once in the bathroom, Appellant held her by her arms, complaining that he believed she wanted a divorce. When he then grabbed her by the throat, she told him that he was hurting her. (Tr., p. 386.) Mrs. Thomas testified that Appellant used his non-dominant hand to punch her across the face, causing her nose to bleed and her teeth to hit the inside of her mouth, before holding her by the hair and slapping her across the face multiple times. (Tr., pp. 386-387.) She testified that after she was slapped she told Appellant to stop and that he was hurting her but that this caused Appellant to use his non-dominant hand to hold her by her hair and use his dominant hand to choke her while saying, "[y]ou want a divorce. You're going to leave me. I'll kill you. You won't leave me. No one else will have you. You'll suffer." (Tr., p.

387.)  Appellant then pushed her towards the already filled bathtub, knocking her knee into it, and continued to hold her by the hair and choke her.  (Tr., pp. 387-388.)

{¶4}  Mrs. Thomas testified that Appellant put her head in "scalding" and burning hot water.  (Tr., p. 388.)  She testified that she was able to unpin her arm from the side of the tub, push up and cry for help.  However, Appellant slammed her head into the side of the tub, leaned on her until she slid into the tub, and proceeded to choke her from the back of her neck while holding her under the water by her hair.  (Tr., pp. 388-389.)  Mrs. Thomas testified that while Appellant continued choking her she attempted to pull the drain to the tub, believing she was going to die, prior to blacking out.  (Tr., p. 389.)

{¶5}  Appellant was issued an indictment on July 13, 2016, by a Grand Jury in Belmont County consisting of five charges:  two alternative charges of kidnapping in violation of R.C. 2905.01(A)(3) and R.C. 2905.01(B)(2) respectively, both first degree felonies; two alternative charges of felonious assault in violation of R.C. 2903.11(A)(1) and R.C. 2903.11(A)(2) respectively, both second degree felonies; and attempted murder in violation of R.C. 2903.02(A), a first degree felony.

{¶6}  A jury trial was held on May 4, 2017.  Appellant was found guilty on both counts of kidnapping in violation of R.C. 2905.01(A)(3) and R.C. 2905.01(B)(2), and a single count of felonious assault in violation of 2903.11(A)(2).  Appellant was found not guilty of the alternate felonious assault charge and the attempted murder charge.  A sentencing hearing was held on May 31, 2017.  The two kidnapping convictions were merged for sentencing and the trial court imposed a sentence of eleven years on those convictions.  Appellant was sentenced to eight years for felonious assault.  The

sentences were ordered to run consecutively for a total stated prison term of nineteen years.  Appellant filed this timely appeal.

## ASSIGNMENT OF ERROR NO. 1

THE TRIAL COURT ERRED BY FAILING TO GRANT A MISTRIAL OR IMPOSING A SANCTION WHERE THE STATE FAILED TO PROVIDE WRITTEN SUMMARES [SIC] OF ORAL STATEMENTS MADE BY MR. THOMAS THAT WERE REQUESTED IN HIS DEMAND FOR DISCOVERY.

{¶7}    Appellant argues that the trial court failed to grant a mistrial or impose a sanction when the prosecution elicited testimony from witnesses regarding statements made by Appellant, where these statements were not provided to the defense in its demand for discovery.  We note that in his brief, Appellant cites to the wrong version of the criminal rule on which he relies.

{¶8}    The correct version of Crim.R. 16(B) requires prosecuting attorneys to provide copies or photographs of certain information to the defense provided that the defense makes a written demand for discovery.  Specifically, Crim.R. 16(B)(1), (5), and (7) provide that, following such a demand, the prosecution must provide:

(1)  Any written or recorded statement by the defendant or a co-defendant, including police summaries of such statements * * *

(5)  Any evidence favorable to the defendant and material to guilt or punishment;

* * *

(7) Any written or recorded statement by a witness in the state's case-in-chief, or that it reasonably anticipates calling as a witness in rebuttal.

{¶9} The rule specifically refers to discoverable evidence that is written or recorded. Other courts have determined that, "[a] writing or recording is only a statement for purposes of Crim.R. 16 if the witness prepared, signed, or adopted the statement; or if it is a substantially verbatim recital of the witness's statement written in a continuous, narrative form." *State v. Scoggins,* 4th Dist. No. 16CA3767, 2017-Ohio-8989, ¶ 38; *State v. Cunningham*, 105 Ohio St.3d 197, 2004-Ohio-7007, 824 N.E.2d 504, ¶ 44; *State v. Phillips*, 4th Dist. Nos. 89-CA-32 & 89 CA-33, 1992 WL 42790, *5 (Mar. 5, 1992); *State v. Johnson*, 62 Ohio App.2d 31, 403 N.E.2d 1003 (6th Dist.1978), paragraph one of the syllabus; *State v. Moore*, 74 Ohio App.3d 334, 340, 598 N.E.2d 1224 (10th Dist.1991).

{¶10} Appellant argues that there were four different witness statements made at trial that were not disclosed after his demand for discovery, in violation of Crim.R. 16. The first is a statement made by Mrs. Thomas, who testified that during the attack Appellant said "[i]f you call the cops, I am going to kill you." (Tr., p. 398.) The second was made by his youngest daughter, Teri Thomas, who testified Appellant stated that he was "going to put [Mrs. Thomas] in the ICU * * * [Mrs. Thomas] [will] suffer before they get a divorce." (Tr., p. 324.) The third was made by his daughter-in-law, Taylor Thomas, who testified that on the way to the hospital Appellant said "[t]hat he was really, really sorry, and he didn't mean what he did." (Tr., p. 289.) The final statement was made by Brittany Higgs, Appellant's oldest daughter, who stated that while checking Appellant into the psychiatric facility at the hospital, Appellant was asked what

had brought him to the facility. Higgs testified that Appellant responded, "[w]ell, I guess I'm crazy, because I tried to drown my wife in the bathtub." (Tr., p. 576.)

{¶11} Appellant argues that these oral statements witnesses testified were made by him were discoverable evidence pursuant to Crim.R. 16 and that failure to provide them prior to trial amounted to prejudicial error, warranting mistrial or other sanction. This argument is meritless given the actual language and intent of the rule. The testimony in question was made by witnesses whose names and addresses were indisputably disclosed. The relevant provisions of Crim.R. 16(B) explicitly state that the kind and quality of discoverable evidence the rule is concerned with is that which is written or recorded, or is "favorable to the defendant and material to guilt or punishment." It is clear that these statements were not favorable to Appellant, so they fail to meet this prong of the statute. Regardless, the statements in question were volunteered by the witnesses at trial. They had not previously been written or recorded. As such, the statements do not meet the requirements necessary in order to be considered a discoverable statement pursuant to Crim.R. 16: they were not written or recorded; were not prepared, signed, or adopted by the witness; nor were they verbatim recitals written in continuous, narrative form. *Scoggins*, *supra*.

{¶12} Appellant argues that Crim.R. 16 is violated when the state fails to compile and provide a written summary of any oral statement that may have been made. This argument is based on 1994 caselaw and relies on a version of the law that is no longer valid. Even under the outdated version of Crim.R. 16, the statements that were required to be compiled and provided in written form were oral statements made by a defendant to a prosecutor or law enforcement official. The statements Appellant complains of in

this case were made by Appellant, but were not made to a prosecutor or law enforcement official. Rather, these statements were made to his relatives and to hospital personnel. Even under the former version of the rule these statements would not have been required to be summarized and given to Appellant.

{¶13} We have held that "Crim.R. 16 does not mandate the pretrial discovery of witness statements." *State v. McKinnon*, 7th Dist. No. 09 CO 17, 2010-Ohio-2145, ¶ 16. The Sixth District further clarified that "[a]lthough the rule requires the state to disclose witnesses' statements, it does not require the state to reduce interviews with potential witnesses to writing." *State v. Clark*, 6th Dist. No. L-17-1044, 2018-Ohio-521, ¶ 38; *State v. Jackson*, 9th Dist. No. 27739, 2017-Ohio-278, ¶ 11, 81 N.E.3d 942. Moreover, a prosecutor's notes of his discussions with witnesses are protected under Crim.R. 16 as work product. *Scoggins*, *supra*, at ¶ 38; *State v. Henry*, 37 Ohio App.3d 3, 523 N.E.2d 877 (6th Dist.1987), paragraph three of the syllabus. These holdings underscore that the state does not owe a duty to record or make a written summary of oral statements made by witnesses, but merely to provide recorded or written statements if these were otherwise recorded or written in the course of the investigation and do not amount to attorney work product.

{¶14} Even if we were to assume, *arguendo*, that the state's failure to disclose oral statements made by Appellant to witnesses is, in fact, a Crim.R. 16 violation, we would still conclude that the trial court did not abuse its discretion by denying the motion for mistrial or by failing to impose a sanction. The Ohio Supreme Court has held a violation of Crim.R. 16 constitutes reversible error "only when there is a showing that (1) the prosecution's failure to disclose was a willful violation of the rule, (2) foreknowledge

of the information would have benefited the accused in the preparation of his defense, and (3) the accused suffered some prejudicial effect." *State v. Joseph*, 73 Ohio St.3d 450, 458, 653 N.E.2d 285 (1995), citing *State v. Parson*, 6 Ohio St.3d 442, 445, 453 N.E.2d 689 (1983). The court in *State v. Litton*, 12th Dist. No. CA2016-04-005, 2016-Ohio-7913, ¶ 11, citing *State v. Bowshier*, 2d Dist. No. 06-CA-41, 2007-Ohio-5364, ¶ 31 has defined willful as "intent, purpose or design to injure."

**{¶15}** Appellant argues that nondisclosure was willful because the prosecutor knowingly elicited witness testimony in his case-in-chief that contained the testimony Appellant alleges were prejudicial. The state contends Appellant failed to demonstrate any willful conduct on the part of the prosecution. Moreover, as noted by the state, Appellant does not argue that the state failed to provide written witness statements during discovery, but that the witnesses' live testimony at trial contained additional statements made by Appellant, and these could be seen as prejudicial. The state contends Appellant did not object to the statements at trial. A review of the transcripts reveals that while Appellant never objected to any of the four statements made by the four separate witnesses at the time they were made, he did raise an objection the next trial day.

**{¶16}** Regardless, Appellant's contention about the witnesses' trial testimony is misplaced. As noted, Crim.R. 16 serves as a protection against the state willfully withholding prepared written statements that are favorable to the defendant and material to the issue of guilt or innocence. Appellant received prepared, written witness statements prior to trial. The statements at issue here were made by the state's witnesses during trial and which did not appear in their prepared statements. Appellant

does not claim that the state deliberately hid the statements, or even knew that they would be made during trial. Moreover, Appellant did not lodge an immediate objection to the statements when they were uttered, instead allowing the direct testimony to proceed unfettered until the next day, when the issue was raised during a bench conference. If Appellant never made these statements to or in front of the witnesses, as he contends, he had an opportunity to cross-examine each witness, utilizing their written statements (that did not include the disputed remarks) to impeach their direct testimony. He did not attempt such an impeachment. Based on the criminal rule, the prosecutor's failure to disclose the oral statements made by the defendant to or in front of various witnesses is far from willful. The state was not under a duty to disclose these oral statements or compile and provide written summaries of statements not otherwise recorded. We note that there is no evidence of record that the state was aware of these statements made by Appellant to the witnesses prior to their trial testimony. Assuming the witnesses may have disclosed them to the prosecutor, they would be protected as work product. Ultimately, assuming we could find that the state's conduct was willful and defense counsel may have benefited from disclosure of the disputed statements when preparing Appellant's defense, the statements were not so prejudicial as to deny Appellant a fair trial and warrant a mistrial. As the record is replete with evidence of Appellant's conduct on the day in question from multiple witnesses, the disputed statements are not likely to have deprived Appellant of a fair trial.

{¶17} Regarding Appellant's claim that the trial court abused its discretion in failing to impose a sanction, this argument is also meritless. "Imposition of discovery sanctions is discretionary, and we review the trial court's decision for an abuse of

discretion." *Clark*, *supra*, at ¶ 37; *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 20, 33. Abuse of discretion in this case means that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983); *State v. Clark*, 6th Dist. No. L-17-1044, 2018-Ohio-521, ¶ 37 citing *State ex rel. Askew v. Goldhart*, 75 Ohio St.3d 608, 610, 665 N.E.2d 200 (1996).

**{¶18}** Crim.R. 16(L)(1) dictates regulation of discovery and states:

The trial court may make orders regulating discovery not inconsistent with this rule. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances.

**{¶19}** This record shows the state did not run afoul of the discovery rules. The trial court here was correct in overruling the motion to dismiss and in permitting the statements to be heard through witness testimony. Even if the state had failed to turn over discoverable statements, the court was well within the realm of discretion in permitting the testimony because it falls within the broad discretion granted to the court under Crim.R. 16(L)(1).

**{¶20}** For the reasons set forth above Appellant's first assignment of error is without merit and is overruled.

### ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY ALLOWING THE STATE TO USE TEXT MESSAGES CONTAINED IN STATE'S EXHIBIT 15A - 15L DURING CROSS-EXAMINATION.

**{¶21}** Appellant argues that the trial court committed prejudicial error in two separate, distinct arguments. The first involves text messages introduced at trial which Appellant argues were improperly admitted because they were not provided in the defense demand for discovery. The second is that Appellant was prejudiced because the text messages were admitted as prior bad acts evidence when the door had not been opened by the defense. The text messages at issue were sent to Appellant's wife prior to the attack and state the following: 1) "Fuck you very much. What you cut your own fucking throat." (Tr., pp. 798-799); 2) "Don't care who you fuck. Die. You're a fucking whore. And I hate you bitches don't appreciate anything." (Tr., p. 799); 3) "Want treated like a whore * * * [y]ou will suffer till I watch them throw—* * * Till I watch them throw the dirt in your face. Promise." (Tr., p. 800); 4) "I can give any bitch a good life, stupid. I'm going to cut your face off your head. I'm waiting." (Tr., p. 802); 5) "You have to come here sometime * * * [o]r would you rather for me to find you and kill you." (Tr., p. 803); 6) "[F]uck you up that much worse. I will find you. Trust me." (Tr., p. 803); 7) "You will come back and I will be waiting. I have patient [sic] cause your end result will be worth it. Nothing but time. And if you gave away anything of mine, you go to the ICU." (Tr., p. 805); 8) "You better give me some burgers or something. Or I'm going to rip your fucking scar long." (Tr., pp. 805-806); and 9) "Watch your tongue if you like it in your mouth." (Tr., p. 808.)

<u>Texts During Discovery</u>

{¶22} Appellant's first argues that prejudicial error occurred when the trial court permitted these text messages to be admitted at trial when they were not timely produced by the state in the defense demand for discovery. Appellant contends the trial court abused its discretion by failing to impose a sanction for untimely disclosing this text message evidence, again relying on a former version of Crim.R. 16(E)(3).

{¶23} Again, whether to sanction for a discovery violation falls within the broad discretion of the trial court. *State v. Darmond,* 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 20. When determining whether to impose a sanction the court should consider: (1) whether the nondisclosure was willful; (2) whether knowledge of the material beforehand would have benefited the accused in preparing for trial; and (3) whether the accused was prejudiced. *Id.* at ¶ 35, citing *State v. Parson*, 6 Ohio St.3d 442, 453 N.E.2d 689 (1983), syllabus.

{¶24} The record reveals the state received these text messages from a lay witness the evening of Monday, May 1, 2017. (Tr., p. 166.) Both parties concede that the prosecution provided defense counsel with emailed copies of the text messages the morning of Wednesday, May 3, 2017, the day before trial. Following voir dire and prior to empaneling the jury on Thursday May 4, 2017, defense counsel moved to exclude the text messages under Evid.R. 404, prior bad acts evidence. At that time, the state indicated that it did not intent to introduce the text messages as evidence during trial, but if it were to seek admission the state would rely on Evid.R. 801(D)(2), admission by a party-opponent. The trial court found "a statement is not hearsay if the statement is offered against a party and is the parties' own statement." (Tr., p. 169.) The court ultimately overruled the motion but stated that the court would reconsider the issue if

and when the state sought admission of the text messages into evidence. We note that Appellant did not request a continuance based on this evidence.

{¶25} On Saturday, May 6, 2017 the defense called Appellant to testify on direct examination as its final witness. Based on Appellant's direct testimony, the state sought on cross-examination to admit the text messages into evidence. Appellant's counsel objected. The trial court overruled the objection and permitted the text messages to be admitted. Appellant's counsel raised numerous objections regarding the text message evidence, including: a motion to exclude; an objection on the grounds of hearsay; an objection regarding improper impeachment, arguing that the door had not been opened to allow for the admission of the text messages; and an objection based on Evid.R. 404(B) arguing that prior bad acts should be excluded.

{¶26} The trial court overruled each of Appellant's objections. Defense counsel additionally made a motion to strike all of Appellant's responses to the state's questioning about the text messages on the basis that a document cannot be authenticated by verifying its contents. Counsel also raised a second objection that the texts were introduced as improper impeachment evidence of a hearsay declarant, which the trial court again overruled.

{¶27} To demonstrate an abuse of discretion, Appellant must first show that the prosecutor's nondisclosure of discoverable evidence was willful in violation of the rule. *Parson*, *supra*, at 445. Appellant's only argument in this regard is that the text messages were untimely disclosed; the messages were discovered on Monday evening and were not disclosed to defense counsel until Wednesday morning. "Willful" has

been defined as "intent, purpose or design to injure." *Litton*, *supra*, at ¶ 11, citing *Bowshier*, *supra*, at ¶ 31.

**{¶28}** In *State v. Bandy*, we held that when a prosecutor receives new evidence the day of trial and discloses that evidence to opposing counsel on that day, it is not a willful violation of Crim.R. 16. *State v. Bandy,* 7th Dist. Nos. 10 MA 74, 10 MA 120, 2011-Ohio-4332, ¶ 13. Also, in *State v. Morris,* we held that when the state received new evidence one week prior to trial and does not disclose the evidence to opposing counsel until the day prior to a pretrial hearing, the late disclosure does not constitute a willful violation. *State v. Morris,* 7th Dist. No. 08 CO 7, 2009-Ohio-3326, ¶ 115.

**{¶29}** In the instant matter, the state disclosed the new evidence within approximately one and one-half days of receiving the materials. While discovery and disclosure were both on the eve of trial, similar to *Morris,* these materials were disclosed the day prior to trial and were not actually used in trial until the final day of testimony, against the final witness on cross-examination. This occurred four days after the initial disclosure. Disclosure within days of receiving the discovery materials does not meet the definition of "willful." Given that the evidence was disclosed within a day and a half of receiving the materials and that the evidence was not used until four days later on the final day of witness testimony, it is evident that the short period before disclosure occurred in this case does not rise to the level of a willful violation of the rule.

**{¶30}** Even if we were to view this period of time between receiving the evidence and its disclosure to defense counsel as a willful violation, Appellant must also show that having the information sooner would have benefited the defense in preparation for trial and that the failure to disclose resulted in prejudice. Appellant's sole argument in

this regard is that having the text messages earlier would have benefited Appellant in deciding how to testify on direct examination (rather than "whether" to testify.) At no time did Appellant contest the authenticity of the text messages nor did he seek a continuance to allow more time to prepare his defense. Although Appellant objected to receiving the text message evidence at such a late hour, he has not remotely demonstrated that he was prejudiced by not having the evidence earlier given the facts and procedural history of this case.

{¶31} Appellant appears to argue that prejudice existed simply because the materials contained "damaging incriminating statements made by [Appellant]." (Appellant's Brf., p. 9.) Text messages sent from a defendant are "the party's own statements if the statements were properly authenticated." *State v. Shaw,* 7th Dist. No. 12 MA 95, 2013-Ohio-5292, ¶ 42. Again, Appellant does not contest the authenticity of the text messages in question. Instead he argues that because his texts were obviously damaging, this introduction against him automatically resulted in prejudice. The fact that these messages were obviously damaging does not address any prejudice that may have been suffered simply by their tardy disclosure, the issue in this assignment. Appellant does not meet the burden in showing that prior knowledge would have benefited defense preparation. Appellant was clearly well aware of the existence of the text messages in question and did not ask for more time to prepare to address them if offered into evidence.

{¶32} Assuming Appellant met his burden of proving willfulness, beneficial foreknowledge, and prejudice, the trial court did not abuse its discretion by failing to impose a sanction or granting a motion to strike. Crim.R. 16(L)(1) specifically states

that in regulating discovery, "the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."

{¶33} Again, Appellant failed to ask for a continuance or other less stringent discovery sanction. Assuming a discovery violation had occurred, the court may have been justified in imposing a sanction, but courts are not bound to impose sanctions or grant motions to strike. A court also "may make such other order as it deems just under the circumstances." Crim.R. 16(L)(1). The trial court in this case elected to postpone ruling on admitting the evidence to see whether and in what circumstances it would be produced at trial. Postponing a ruling on the admissibility of the evidence is well within the discretion of the court.

{¶34} Appellant does not meet the burden of proving willful nondisclosure, beneficial foreknowledge in preparing a defense, or prejudice from late disclosure of the evidence. Even if Appellant did meet this burden, the remedy imposed by the trial court would be adequate and within the scope of the discretion of the trial court.

### Prior Bad Acts

{¶35} Appellant's second argument in this assignment of error is that the evidence should have been excluded because it was used by the state to prove prior bad acts. Appellant alleges here that the trial court permitted the state to use prior bad acts evidence contrary to Evid.R. 404(B) when the acts in question were not first raised by the defense, when the state did not provide timely notice of intent to use such evidence, and that no curative instruction was given to the jury.

**{¶36}** "Trial court decisions regarding the admissibility of other-acts evidence under Evid.R. 404(B) are evidentiary determinations that rest within the sound discretion of the trial court. Appeals of such decisions are considered by an appellate court under an abuse-of-discretion standard of review." *State v. Morris,* 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, syllabus.

**{¶37}** The evidence here consisted of text messages between Appellant and his wife, Mrs. Thomas, which occurred approximately one week prior to the incident at issue. Again, defense counsel objected to the use of the text message evidence on numerous grounds, multiple times. Appellant's initial objection and request for an Evid.R. 404(B) hearing on the evidence was overruled and the trial court stated that it would rule on the evidence if and when the state intended to admit the evidence.

**{¶38}** The state ultimately did seek to introduce the text message evidence in response to Appellant's testimony on direct examination that Appellant and his wife were on "good terms" prior to the incident. The messages were authenticated by Appellant on cross-examination. (Tr., pp. 788-791.) The messages amounted to conversations between Appellant and his wife in which Appellant made numerous threats, including that he would kill her. (Tr., pp. 798-806.)

**{¶39}** Appellant contends that the state introduced the text messages under Evid.R. 404(B) to prove prior bad acts and that the evidence was inadmissible because the defense did not open the door to the issue. Further, Appellant contends the state did not give notice of its intent and purpose to use the evidence. The prosecutor stated:

> [Appellant's counsel] is correct that we did provide [the texts]. I received
> those not through law enforcement, but from lay witnesses on Monday

Case No. 17 BE 0028

evening. We did provide them on Wednesday morning. I think that it may have -- without a doubt, they have been or they were provided late. So the State of Ohio, at this juncture, will ask the Court not to make a ruling until or unless we decide to use those – or, as evidence. At this point in time, we don't intend to do that.

(Tr., pp. 166-167.)

{¶40} Appellant complains that the prosecutor expressly stated prior to trial that it was not his intention to use the evidence at trial. At trial, the state requested the court for permission to use the evidence to impeach Appellant's testimony, arguing that Appellant opened the door to the text message evidence when he declared that he and his wife were on "good terms." (Tr., p. 787.)

{¶41} Evid.R. 404(B) reads:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

{¶42} The Ohio Supreme Court established a three-step analysis for considering "other acts" evidence:

The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R 403.

*State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20.

**{¶43}** Appellant takes issue with the text messages being used during cross-examination to impeach one comment on direct examination: that he and his wife were on "good terms." (Tr., p. 787.) This record shows that when asked on direct examination by his counsel whether he found it puzzling his wife would claim he was trying to kill her, Appellant responded, "I don't understand why * * * we was [sic] on such good terms, especially for these last two months. You know, we did things together. We had plans, like going to the lake together. Doing things together, just me and her, you know. Things that's special to me. It doesn't matter if we take a ride in a car. It's me and her." (Tr., p. 751.) Appellant also testified:

I try to talk to her about it. Trying to make up, do things, special things. Sometimes, some days it works. Some days she says she's done, you know. That hurts, but I know that that's my fault. But you know, I'm trying

to make up for it. I'm trying to move on with my wife through this, you know. I am not perfect. I ain't claim to be a perfect husband or father.

(Tr., p. 749.)

**{¶44}** The state argues that although it initially did not intend to use the text messages, the text messages became relevant to demonstrate that Appellant was being untruthful. After objections and multiple bench conferences, the trial court ultimately permitted the state to question Appellant about the texts. The text messages clearly contradicted Appellant's assertion that he and his wife were on good terms in their marriage. As the theory proposed by the state in using the texts was that Appellant was not being truthful in his characterization of his relationship with the victim, this record reflects that he opened the door to introduction of the text messages which were sent by Appellant approximately a week prior to the offense. The relevance of the texts is patently clear as they reveal the parties were obviously not on "good terms." The use of the evidence comports with the first step of the *Williams* test.

**{¶45}** Reviewing the second step, it is clear that the purpose of the text messages was not to show that Appellant acted in conformity with his past behavior, but rather to establish Appellant's motive and intent pursuant to the Evid.R. 404(B) exceptions. The evidence tends to show Appellant's motive or intent to commit some act of violence against Mrs. Thomas. There is nothing on the record to indicate that the purpose of introducing the text messages was to show that Appellant was acting in conformity with any past behavior.

**{¶46}** Finally, under the third *Williams* step, the probative value of the evidence outweighs the risk of unfair prejudice. It does show quite clearly that Appellant's

relationship with his wife was not good and that he should not have been surprised she thought he might hurt her. Additionally, the amount of other evidence and testimony in this particular case is overwhelming. We have held that even where it was error to admit the evidence, "[w]here there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal." *State v. Howard-Ross*, 7th Dist. No. 13 MA 168, 2015-Ohio-4810, 44 N.E.3d 304, ¶ 22, citing *State v. Lytle*, 48 Ohio St.2d 391, 358 N.E.2d 623 (1976), paragraph three of the syllabus, vacated on other grounds in *Lytle v. Ohio*, 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154 (1978).

**{¶47}** Appellant argues that he did not open the door for impeachment and that, even if he did, the state used the evidence for purposes beyond those permitted by the rule. The state argued at trial that it should be permitted to impeach Appellant on the issue of whether or not he and his wife were on "good terms" based on Appellant's testimony on direct examination that they were. In fact, Appellant claimed he was puzzled by her assertions that he wanted to harm her, because they were on such "good terms." (Tr., p. 787.) Evid.R. 608 allows for impeachment based on specific acts when it is being used to show truthfulness or lack thereof. It states in pertinent part:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid. R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for

truthfulness or untruthfulness, or (2) concerning the character for truthfulness.

Evid.R. 608 (B).

**{¶48}** The state used the evidence to impeach Appellant, who testified that he and his wife had a good relationship, and this impeachment tended to show Appellant's motive and intent to commit the charged conduct. Under Evid.R. 404(B), in criminal cases the party seeking to introduce evidence of prior bad acts has a duty to provide notice to opposing counsel prior to trial, or if permission is being sought for the first time during trial, this tardiness must be excused by the court for good cause shown. In the instant case, the trial court excused nondisclosure during trial for good cause shown. The record supports the court's decision because it reveals that the state was first presented with the evidence right before trial, promptly disclosed the evidence to defense counsel and, even then, the evidence was not used in the state's case in chief but was used for impeachment of Appellant on cross-examination. Therefore, the tardiness was properly excused by the court and the evidence was admissible under Evid.R. 404(B).

**{¶49}** Appellant's final contention regarding this issue is that the trial court should have issued a curative instruction to the jury. A trial court's curative instruction is recognized as an effective way to remedy errors which occur during trial. *State v. Shaw*, 7th Dist. No. 15 BE 0065, 2017-Ohio-1259, ¶ 14; *State v. Zuern*, 32 Ohio St.3d 56, 61, 512 N.E.2d 585 (1987). There were no errors requiring the remedy of a curative instruction, here. Even if Appellant had proved error, his counsel did not timely request a curative instruction. Appellant argues that defense counsel objected to the evidence

and requested an Evid.R. 404(B) instruction, citing a response from the trial court regarding whether or not the evidence actually amounted to prior bad acts. There is no direct request from defense counsel for an Evid.R. 404(B) instruction prior to jury instructions being given. While some discussion of jury instructions appears on the record, no actual request was made that such an instruction be given. (Tr., p. 796.) The record shows that defense counsel did not ask for an Evid.R. 404(B) instruction until Tuesday May 9, 2017, after the jury instructions had already been given and approved by both counsel. Moreover, each time defense counsel argued against admission pursuant to Evid.R. 404(B), the court supplied an explanation and definition of the rule. Therefore it cannot be said that the trial court did not give any instruction regarding the acceptable use of Evid.R. 404(B).

{¶50} Pursuant to Evid.R. 103(A)(1), we will not find error in a trial court's decision to admit evidence unless a substantial right of the party is affected and a timely objection or motion to strike is made on the record. See, also, Crim.R. 52(A). A trial court's decision to admit prior bad acts evidence under Evid.R. 404(B) is reviewed for an abuse of discretion. *State v. Moore,* 7th Dist. No. 02CA152, 2004-Ohio-2320, ¶ 39. We have held that an abuse of discretion is found only if, after considering the totality of the circumstances, the court's decision was unreasonable, unconscionable, or arbitrary and that it materially prejudiced the defense. *State v. Parker*, 7th Dist. No. 04CO44, 2005-Ohio-6777, ¶ 29 citing *Moore*, *supra*, at ¶ 39.

{¶51} Based on this record it cannot be said that the trial court committed an abuse of discretion. There was overwhelming evidence presented against Appellant. While the test messages were damaging, we cannot say that Appellant would not have

been convicted had they been excluded. Further, Appellant's defense was based on his assertion that his wife made up the incident and that they had a good relationship. Even if the text messages had been erroneously admitted, the probative value substantially outweighed the prejudicial effect. Therefore, based on this reasoning and the totality of the circumstances we cannot say that the trial court's decision was unreasonable, unconscionable, or arbitrary or that it materially prejudiced the defense so far as to deny Appellant the right to a fair trial. Appellant's second assignment of error is without merit and is overruled.

ASSIGNMENT OF ERROR NO. 3

THE CUMULATIVE EFFECT OF THE ERRORS SET FORTH IN THE FIRST AND SECOND ASSIGNMENTS OF ERROR DENIED MR. THOMAS A FAIR TRIAL.

**{¶52}** In his third assignment of error, Appellant asserts that the nondisclosure of Appellant's oral statements and untimely disclosure of the text message evidence constitute willful discovery violations that, together, seriously affect the integrity and outcome of Appellant's proceeding under the cumulative error doctrine.

**{¶53}** We have held that under this doctrine, a conviction will be reversed when the cumulative effect of the errors in a trial deprives a defendant of the constitutional right to a fair trial, even though each of the errors in isolation does not individually rise to the level necessary for reversal. *State v. Baer*, 7th Dist. No. 07 HA 8, 2009-Ohio-3248, ¶ 82; *State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995). The cumulative error doctrine does not apply when the alleged errors are harmless or nonexistent. *Id.*; *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, ¶ 48.

Case No. 17 BE 0028

{¶54} It is not sufficient to just "intone the phrase cumulative error." *State v. Agee*, 7th Dist. No. 14 MA 0094, 2016-Ohio-7183, ¶ 72 citing *State v. Young*, 7th Dist. No. 07 MA 120, 2008-Ohio-5046, ¶ 65, quoting *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, 854 N.E.2d 150, ¶ 197. "Thus, where an appellant raises the doctrine without further analysis, the assignment of error has been held to lack substance." *Agee* at ¶ 72, quoting *Young, supra*, at ¶ 65, citing *State v. Sapp*, 105 Ohio St.3d 104, 2004-Ohio-7008, 822 N.E.2d 1239, ¶ 103.

{¶55} Based on our resolution of the assignments of error on this appeal, all claimed errors either fail to rise to the level of error at all or are harmless. Therefore, there is no cumulative prejudicial error. Appellant merely states that cumulative error existed on the basis of his previous assignments of error. Appellant provides no further analysis regarding how the alleged cumulative error resulted in prejudice or in the denial of a fair trial. Appellant's argument is without merit and is overruled.

<u>ASSIGNMENT OF ERROR NO. 4</u>

THE TRIAL COURT ERRED BY FALILING [SIC] TO MERGE THE FELONIOUS ASSAULT CONVICTION WITH THE MERGED KIDNAPPING CONVICTIONS FOR SENENCING [SIC] PURRPOSES [SIC] AS ALLIED OFFENSE OF SIMILAR IMPORT.

{¶56} In his fourth assignment of error, Appellant claims the trial court erred by failing to merge his felonious assault conviction with the already merged kidnapping convictions as allied offenses of similar import for sentencing purposes.

{¶57} Appellant was convicted on two counts of kidnapping in violation of R.C. 2905.01(A)(3) and R.C. 2905.01(B)(2), which the trial court merged at sentencing.

Appellant was also convicted of a single count of felonious assault in violation of 2903.11(A)(2). R.C. 2905.01(A)(3) and (B)(2) provide:

(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

* * *

(3) To terrorize, or to inflict serious physical harm on the victim or another;

* * *

(B) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall knowingly do any of the following, under circumstances that create a substantial risk of serious physical harm to the victim or, in the case of a minor victim, under circumstances that either create a substantial risk of serious physical harm to the victim or cause physical harm to the victim:

* * *

(2) Restrain another of the other person's liberty.

{¶58} R.C. 2903.11(A)(2) provides:

(A) No person shall knowingly do either of the following:

* * *

(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

{¶59} Appellant correctly cites the controlling law R.C. 2941.25 which states:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶60}** The issue of allied offenses for purposes of merger pursuant to R.C. 2941.25 is reviewed under a *de novo* standard. *State v. Fortner*, 2017-Ohio-4004, 82 N.E.3d 60, ¶ 7 (7th Dist.) citing *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 26-28. The burden is on the defendant to establish his entitlement to merger. *Id.* citing *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 18.

**{¶61}** In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors: the conduct, the animus, and the import. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraph one of the syllabus. If any of the following are true, a defendant's convictions do not merge and he or she may be sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance; in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus. *Id.*

Case No. 17 BE 0028

**{¶62}** In the instant matter, the record reflects that Appellant went to the victim's bedside and grabbed her by the hair and the arm, forcibly pulling her out of bed to a standing position. He dragged her into the bathroom. At that point, the forcible detainment of the victim and the act of leading her against her will into the bathroom completed the kidnapping offense. Once Appellant had the victim in the bathroom, he punched her face multiple times and held her head under the scalding water, preventing her from breathing. This second course of conduct constituted felonious assault. The harm caused by the kidnapping is clearly identifiable from the felonious assault, one reason being that the victim would not be near the tub of water were it not for the kidnapping and restraint of her liberty.

**{¶63}** The second factor requires review of whether the offenses were committed separately. If so, there is no merger. The evidence of record demonstrates two separate courses of conduct here. The first offense involved restraint of the victim and forcibly removing her to the bathroom. The second offense consisted of utilizing the bath tub as a deadly weapon and submerging the victim after multiple punches to the face. Therefore, this record shows the offenses were committed separately.

**{¶64}** The third factor requires that the offenses be committed with separate animus or motivation. "Animus refers to the defendant's immediate criminal motive, intent or state of mind." *State v. Gilbert*, 7th Dist. No. 08 MA 206, 2012-Ohio-1165, ¶ 47; *State v. Hooper*, 7th Dist. No. 03 CO 30, 2005-Ohio-7084, ¶ 15, citing *State v. Blankenship*, 38 Ohio St.3d 116, 119, 526 N.E.2d 816 (1988). Here, the restraint and movement involved in Appellant's kidnapping of Mrs. Thomas is not merely incidental to the felonious assault offense. Appellant kidnapped the victim from the bedroom to the

bathroom, in part to avoid waking his grandchild. Once there, his assault began both verbally and with punches. He then used the bath tub as a deadly weapon, supporting the felonious assault charge. Therefore, separate animus exists precluding merger.

{¶65} In analyzing the *Ruff* factors, the offenses were dissimilar in import, were committed separately, and had separate animus or motivation. Any one finding precludes merger. The trial court sentenced Appellant to eleven years on the merged kidnapping convictions and eight years for felonious assault, and ran the sentences consecutively. Based on these findings, Appellant's fourth assignment of error is without merit and is overruled.

{¶66} For the reasons set forth above, Appellant's arguments are without merit and the judgment of the trial court is affirmed.

Donofrio, J., concurs.

Robb, P.J., concurs.

Case No. 17 BE 0028

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**